IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA, HUNTSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* Ben Ferris,<br><br>Plaintiffs,<br><br>v.<br><br>Afognak Native Corporation and Alutiiq, LLC,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § § § | CIVIL. NO. _____<br><br>RELATOR BEN FERRIS'S ORIGINAL COMPLAINT FILED PURSUANT TO 31 U.S.C. §§ 3729 -3732 FEDERAL FALSE CLAIMS ACT<br><br>FILED UNDER SEAL<br><br>JURY TRIAL DEMANDED |

## RELATOR BEN FERRIS'S ORIGINAL COMPLAINT

# TABLE OF CONTENTS

I. INTRODUCTION TO CASE ................................................................................................1

II. PARTIES ...........................................................................................................................3
    A. Plaintiffs.................................................................................................................3
        i. Relator.........................................................................................................3
    B. Defendants .............................................................................................................4
        i. Afognak Native Corporation......................................................................4
        ii. Alutiiq, LLC................................................................................................4

III. RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY ....................................................5

IV. JURISDICTION AND VENUE ...........................................................................................5

V. STATUTORY BACKGROUND..............................................................................................6
    A. Alaska Native Corporations...................................................................................6
    B. Small Business Enterprises....................................................................................7
        i. NAICS Size of Business Standards ...........................................................7
        ii. Rules of Affiliation in Applying NAICS Size of Business Standards...............8
    C. Socially and Economically Disadvantaged Groups and the 8(a)
        Business Development Program - Minority Small Business and Capital
        Ownership Development Program........................................................................8
        i. Socially and Economically Disadvantaged Small Businesses.........................9
        ii. Section 8(a) Small Business Must Perform at Least Fifty Percent of
            Cost of the Contract ...................................................................................9
    D. Alaska Native Corporations and the 8(a) Business Development Program .................10
        i. Eligibility .................................................................................................10
        ii. Procedure for Enrollment..........................................................................12

VI. RELATOR'S DISCOVERY OF DEFENDANTS' FRAUD ......................................................13
VII. DEFENDANTS' FRAUDULENT USE OF 8(a) SUBSIDIARIES THROUGHOUT THE SUBMISSION
    OF BIDS AND PERFORMANCE OF GOVERNMENT CONTRACTS .........................................15
    A. Afognak – General Organization.........................................................................15
    B. Alutiiq and 8(a) Subsidiaries ...............................................................................16
    C. Fraudulent Existence and Use of 8(a) Subsidiaries .............................................17
        i. Afognak's True Operational Structure......................................................17
        ii. Designation of Contracts to the Various 8(a) Companies .......................18
        iii. Discussion Among Leadership Regarding Sham 8(a) Companies .................19
        iv. Fraudulent Representation of the General Manager's Role.............................20
        v. Fraudulent Representation in SBA 8(a) Application and Annual Updates:
            Barnes & Conrow ....................................................................................21
        vi. Other Demonstrations and Certifications.................................................23
        vii. Alutiiq Melee – Example of a Sham 8(a) Entity.......................................24
        viii. How Internal Reports Reveal the 8(a) Companies to be Shams .....................26
    D. Afognak's and Alutiiq's Conspiracy to Create And Use Sham 8(a) Companies ........28

<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>

VIII. ACTIONABLE CONDUCT BY DEFENDANTS UNDER THE FALSE CLAIMS ACT .............................29

    A. Applicable Law..................................................................................................29
        i. The False Claims Act........................................................................29
    B. Defendants' Violation of the FCA.....................................................................33
        i. Defendants' Fraudulent Representation and Certification as to their 8(a) Business Entities Violate the FCA former 31 U.S.C. § 3729(a)(1); current 31 U.S.C. § 3729(a)(1)(A)....................................................33
        ii. Defendants' Fraudulent Representation and Certification as to their 8(a) Business Entities Violate the FCA former 31 U.S.C. §3729(a)(2); current 31 U.S.C. §3729(a)(1)(B) .................................................35
        iii. Defendants' Conspiracy to Fraudulently Represent and Certify their 8(a) Business Entities Violate the FCA former 31 U.S.C. §3729(a)(3); current 31 U.S.C. §3729(a)(1)(C) .................................................37

IX. CAUSES OF ACTION............................................................................................38

    A. COUNT I. – FALSE CLAIMS ACT – 31 U.S.C. § 3729(a)(1) (former); 31 U.S.C. § 3729(a)(1)(A) (current) .................................................................38

    B. COUNT II. – FALSE RECORDS OR STATEMENTS – 31 U.S.C. § 3729(a)(2) (former); 31 U.S.C. § 3729(a)91)(B) (current)............................................39

    C. COUNT III. – CONSPIRACY TO DEFRAUD THE GOVERNMENT – 31 U.S.C. § 3729(a)(3) (former); 31 U.S.C. § 3729(a)(1)(B) (current)..............................41

X. JURY DEMAND ...................................................................................................43

1. Plaintiff/Relator Ben Ferris submits this Original Complaint under 31 U.S.C. § 3729-3732 ("False Claims Act") on behalf of the United States of America and on his own behalf to recover all damages, penalties, and other remedies established by the False Claims Act and would show the following:

### I. INTRODUCTION TO CASE

> "I asked him, (Elijah Barnes) so what is Bernie (Conrow) GM (General Manager) of and he goes "I dunno," and then Bernie came in and I said "what are you GM of and he said "Alutiiq Melee" and I said "what do you do" and he said "nothing." He says "I'm supposed to visit the company once every six months." So I said "Well where you gonna do that?" and he says "I dunno, I don't know where they are at." "I am a Senior Vice President and I couldn't tell you who the GMs of our companies are...."[1]
>
> "Do you think if we were running subsidiaries like companies, like if Guards was a subsidiary, we wouldn't have gotten to where we are now?"
> "No we would not – no we couldn't."[2]

2. For the last seven years, Afognak Native Corporation ("Afognak NC") and its wholly owned subsidiary, Alutiiq, LLC ("Alutiiq"), have made a mockery of laws that are meant to remedy the historical treatment of Native Alaskans through favorable consideration for government contracts. Not content with its considerable statutory advantages, in 2007 Afognak NC adopted an operational structure in which its multiple 8(a) companies–supposedly the government's contractual partners–exist only as names on bids and invoices. These 8(a) companies are cycled through the bidding process, thereby obtaining government contracts, and eventually capture so much business for themselves that they become too big to qualify for subsequent bids. By employing these sham companies while illegally misrepresenting to the

---

[1] Relator Ferris's recorded conversation with Senior Vice President Ron Hancock wherein Hancock is telling Ferris that Afognak's 8(a) business entities do not exist, that the alleged General Managers of such entities don't even know the entities of which they are in charge and that the General Managers do no work for such entities. All the work performed is for the Afognak's divisions.

[2] Relator Ferris's recorded conversation with Senior Vice President Ron Hancock discussing the fact that Afognak's 8(a) subsidiaries do not exist. Ferris asked the question and Hancock responded.

1

Government that the companies were real and performed the contracts at issue, Afognak NC has freed up a central core of employees to assign to whatever contract arises, thereby gaining unfair competitive advantages over other native Alaskan companies. By 2012, after six years of perpetrating this scheme, Afognak NC had doubled its 2007 revenue and become the sixth largest Alaska Native Corporation in the United States.

3. In recognition of the social and economic hardships that have long plagued Native Americans, Congress in 1986 enacted legislation that allowed the Indian tribes, including Native Alaska Corporations, to participate in the 8(a) Business Development program. The 8(a) Business Development Program was originally created by the United States to provide socially and economically disadvantaged small businesses the "maximum practical opportunities" to participate in the marketplace of government contracting. Eligibility for the program requires an applicant to be a "small business concern" and is good for no longer than nine years.

4. The Afognak NC participates in the Small Business Association's 8(a) Business Development Program through its wholly-owned subsidiary Alutiiq. Since 2007, Defendant Afognak NC, through Alutiiq, has been awarded millions of dollars in government contracts. In its submission of bids for these contracts, Afognak represents that the particular small business included in the submission paperwork qualifies as an 8(a) business. It also certifies to the government that the particular 8(a) business entity will perform the contract and is in compliance with laws requiring it to perform some portion of the contract itself, typically 50%. 13 CFR 125.6. Once awarded these numerous contracts, Afognak NC presents claims to the United States government for payment under these contracts based on these same representations and certifications regarding the 8(a) business entity that performed the contracted work therein.

5. These certifications and representations are all false. Afognak NC's sham 8(a) entities exist only on paper, and in no way perform these contracts. In actuality it is the business divisions within Alutiiq's corporate structure that bid on and perform the government contracts on a nationwide basis. While the 8(a) companies' bids name the General Managers who will be responsible for performing the contract if awarded, these managers are not aware that the division is submitting a bid to the Government in the names of their 8(a) companies. It is the Senior Vice Presidents of these divisions who submit the bids and decide which sham 8(a) will be included in the paperwork submitted to the government so as to qualify for these government contracts. The Senior Vice Presidents and their employees oversee and manage the division's contracts, and division employees perform the contracts nationwide. The 8(a) entities exist merely as conduits to obtaining government contracts which would otherwise only be available to qualified 8(a) small business entities.

6. Thus, while corporate niceties are observed in communications with the Government, within Afognak NC and Alutiiq there is no pretense concerning the fictional nature of the 8(a) entities. When the entities are mentioned at all, they are the topic of worried jokes circulating about the companies' resultant exposure. In the meantime, while Afognak NC and Alutiiq balloon in size, the Government continues to pay these fictional 8(a) companies as though they were actual Alaska Native small businesses capable of performance instead of mere placeholders on accounting ledgers.

## II. PARTIES

### A. Plaintiffs

#### i. Relator

3

7. Relator Ben Ferris is a citizen of the United States and a resident of the state of Virginia.

## B. Defendants

### i. Afognak Native Corporation

8. Afognak NC, headquartered in Kodiak, Alaska, is an Alaska Village Corporation formed under the 1971 Alaska Native Claims Settlement Act (ANCSA). Afognak NC was organized in 1977 through a merger of the Port Lyons Native Corporation and Natives of Afognak, Inc. It is part of the Koniag Regional Corporation. Originally, Afognak NC's primary focus was the timber development opportunities in the state of Alaska. As those opportunities began to diminish in the late 1990s, the corporation turned to government contracting. It utilized the Small Business Administration's 8(a) Business Development program to build its government contracting interests. Since 2007, Richard M. Hobbs II has been the Chief Executive Officer and President of Afognak NC as well as its wholly owned subsidiary, Alutiiq. He has been with Afognak NC since 2000. Dean J. Clowers has been the Executive Vice President of Afognak NC and Alutiiq since April of 2008. Government contracting has been a successful endeavor for Afognak NC as its gross profits rose from $528 million in the year 2005 to $800 million in 2010. In 2012, it was ranked the sixth largest Alaska Native Corporation.

9. Afognak's Registered Agent is Richard M. Hobbs who may be served at 3909 Arctic Boulevard, Suite 400, Anchorage Alaska, 99503.

### ii. Alutiiq, LLC

10. Alutiiq is a wholly-owned subsidiary of Afognak NC. It is Afognak NC's holding company for the 8(a) subsidiaries and small businesses at issue. Headquartered in Anchorage, it employs over 5,000 people throughout the United States, several territories and abroad. Alutiiq,

through Afognak NC, provides a variety of services to the United States federal government, including security services, logistics, operations and maintenance services, construction, IT/technical services, training services, oilfield services and leasing services.

11. Alutiiq's registered agent is Richard M. Hobbs, who may be served at 3909 Arctic Boulevard, Suite 400, Anchorage, Alaska, 99503.

12. Afognak NC and Alutiiq will herein collectively be referred to as "Afognak" or "Defendants."

### III. RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

13. Any and all acts alleged herein to have been committed by Defendants Afognak NC and Alutiiq were committed by officers, directors, employees, representatives, or agents of those respective defendants, who at all times acted on behalf of the named defendants and within the course and scope of their employment.

14. Afognak NC and Alutiiq are related entities sharing common employees, offices, and business names such that they are jointly and severally liable under legal theories of respondeat superior. Further, the past, present and continuing relations and dealings by and between these related entities are so inextricably intertwined that for the purposes of this suit the two Defendants can and should be considered as a single entity at law and equity.

### IV. JURISDICTION AND VENUE

15. Jurisdiction and venue are proper in this Court pursuant to the False Claims Act (31 U.S.C. § 3732(a)) because Relator's claims seek remedies on behalf of the United States for multiple violations of 31 U.S.C. § 3729 in the United States by the Defendants, some of which occurred in the Northern District of Alabama, Huntsville Division and because the Defendants transact other business with the Northern District of Alabama, Huntsville Division.

16. All of the named Defendants engage in business in the State of Alabama and within the Northern District of Alabama, Huntsville Division, all of which business it engages in through its corporate center, business units, subsidiaries, officers, directors, employees, and agents. All of the named Defendants are subject to the general and specific personal jurisdiction of this Court pursuant to 31 U.S.C. § 3732(a) in that the claims for relief in this action are brought on behalf of the United States for multiple violations of 31 U.S.C. § 3729.

## V. STATUTORY BACKGROUND

### A. Alaska Native Corporations

17. Citing the "immediate need for a fair and just settlement" of all aboriginal land claims, Congress enacted the Alaska Native Claims Settlement Act (ANCSA) in 1971. Pub.L.No.92-203. 85 Stat. 688 (1971)(codified as amended at 43 U.S.C. §§ 1601-1629(h)). By its terms, the ANCSA applies to over two hundred Native villages and urban areas located in Alaska. 43 U.S.C. § 16010(b)(1). The ANCSA defines "Native" as a citizen of the United States with one-fourth degree or more Alaska Indian, Eskimo, or Aleut blood or a combination thereof. 43 U.S.C. § 1602(b). Each of these villages and urban areas is organized into twelve regional corporations and a thirteenth region was created for the benefit of Natives living outside of Alaska. The ANCSA also authorizes Natives living in Native villages within each of the twelve regional corporations to be organized as either for-profit corporations or not-for-profit corporations. 43 U.S.C. § 1607(a). The village corporations are organized as a business under the laws of the State of Alaska for and on behalf of a Native village. 43 U.S.C. § 1602(j). The ANCSA defines the term Native Corporation to mean any regional corporation, any village corporation, any urban corporation and any group corporation. 43 U.S.C. § 1602(m). Afognak NC is organized as a for-profit village corporation.