David F. Taylor (*Pro Hac Vice*)
DFTaylor@perkinscoie.com
Angela R. Jones (*Pro Hac Vice*)
AJones@perkinscoie.com
Kathleen M. O'Sullivan (*Pro Hac Vice*)
KOSullivan@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

James N. Leik (Alaska Bar No. 8111109)
JLeik@perkinscoie.com
PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
Telephone: 907.279.8561
Facsimile: 907.276.3108

*Attorneys for Defendants*
*Afognak Native Corporation and Alutiiq, LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex. rel.* BEN FERRIS,<br><br>               Plaintiff,<br><br>   v.<br><br>AFOGNAK NATIVE CORPORATION and ALUTIIQ, LLC,<br><br>               Defendants. | Case No. 3:15-cv-00150-HRH<br><br>**DEFENDANTS' MOTION TO DISMISS FOR ABUSIVE LITIGATION TACTICS OR, IN THE ALTERNATIVE, TO COMPEL ADDITIONAL DISCOVERY** |

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION .................................................................................. 1

II.     BACKGROUND ................................................................................... 2

        A.      Relator Secretly Copies Defendants' Privileged and Other
                Confidential Documents and Wrongfully Retains Them For
                Use in This Lawsuit ................................................................... 2

        B.      Relator Sends Defendants' Privileged Communications to
                His Attorneys, Who Review the Communications and
                Delay Notifying Defendants ....................................................... 4

        C.      Defendants Finally Learn Relator Possesses Privileged
                Documents and Seek Discovery About His
                Misappropriation ........................................................................ 6

        D.      The Court-Ordered Discovery Shows Relator's
                Misappropriation and Cover-Up .................................................. 8

                1.      Discovery Reveals that Relator Misled the Court
                        and Defendants ................................................................. 8

                2.      Relator Reveals that He and His Counsel Destroyed
                        Evidence ......................................................................... 10

                3.      Relator Stonewalls His Court-Ordered Deposition
                        and Refuses to Produce Any Related Documents............... 12

III.    AUTHORITY ..................................................................................... 13

        A.      Relator's Unfair and Abusive Litigation Tactics Call for
                Dismissal .................................................................................. 13

                1.      Relator Engaged in a Pattern of Willful Misconduct.............. 16

                        a.      Relator Willfully Misappropriated
                                Defendants' Privileged and Other
                                Confidential Documents and Shared Them
                                with His Attorneys ....................................... 16

                        b.      Relator and His Counsel Willfully Accessed
                                and Used Defendants' Privileged
                                Documents in This Litigation ....................... 18

                        c.      Relator Sought to Cover Up His Misconduct
                                by Misrepresenting Facts to Defendants and
                                the Court and Obstructing Discovery ........... 21

                        d.      Relator Willfully Spoliated Evidence ........... 24

                2.      Relator's Misconduct Is Closely Tied to the Matters
                        in Controversy................................................................. 27

                3.      Defendants Have Been Irreparably Prejudiced by
                        Relator's Misconduct ....................................................... 28

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)        -i-

Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 2 of 49

a.   Relator's Use of the Privileged Documents
Prejudiced Defendants ................................................. 28

b.   Relator's Spoliation of Evidence Prejudiced
Defendants ...................................................................... 29

c.   Relator's Misconduct Warrants an
Evidentiary Presumption that Defendants
Were Prejudiced.............................................................. 30

4.   Dismissal Is the Only Effective Remedy and Will
Not Prejudice the Real Party in Interest, the United
States ..................................................................................... 31

5.   Relator's Misconduct Shows that He Should Not Be
Allowed to Represent the Government as a *Qui Tam*
Relator.................................................................................... 33

B.   In the Alternative, Relator Should Be Compelled to
Produce Additional Discovery ............................................. 35

1.   Relator Should Be Compelled to Continue His
Deposition.............................................................................. 35

2.   The Hard Drive, Device Installation Logs, and
Personal Email Address Are Relevant and
Proportional to the Needs of the Case.................................... 36

3.   Relator Waived Any Privilege Over His
Communications with Counsel About Defendants'
Privileged and Confidential Documents ................................. 38

IV.   CONCLUSION.................................................................................. 40

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)        -ii-

# TABLE OF AUTHORITIES

CASES

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*,
    69 F.3d 337 (9th Cir.1995) .......................................................................................................13

*Arnold v. Cargill Inc.*,
    No. 01-2086, 2004 WL 2203410 (D. Minn. Sept. 24, 2004).................................................20

*Bittaker v. Woodford*,
    331 F.3d 715 (9th Cir. 2003) .................................................................................................38

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*,
    408 F.3d 1142 (9th Cir. 2005) ...............................................................................................39

*Cedar Rapids Lodge & Suites, LLC v. JFS Devel., Inc.*,
    No. C09-0175, 2011 WL 13073692 (D. Iowa Feb. 1, 2011)..................................................39

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
    482 F.3d 1091 (9th Cir. 2007) ...............................................................................................13

*Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*,
    561 F.3d 1298 (11th Cir. 2009) .............................................................................................16

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*,
    No. 15-cv-1893-HRL, 2016 WL 5870218 (N.D. Cal. Oct. 7, 2016).....................................25

*Furnish v. Merlo*,
    No. 93-1052-AS, 1994 WL 574137 (D. Or. Aug. 29, 1994)...........................................19, 20

*Gardner v. Toyota Motor Corp.*,
    No. C08-0632RAJ, 2010 WL 3733876 (W.D. Wash. Sept. 1, 2010)....................................39

*Gifford v. Target Corp.*,
    723 F. Supp. 2d 1110 (D. Minn. 2010)..................................................................................20

*Gomez v. Vernon*,
    255 F.3d 1118 (9th Cir. 2001) ...............................................................................................20

*Halaco Eng'g Co. v. Costle*,
    843 F.2d 376 (9th Cir. 1988) .................................................................................................13

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)

-iii-

CASES

*Internmatch v. Nxtbigthing, LLC*,
    No. 14-cv-05438-JST, 2016 WL 491483 (N.D. Cal. Feb. 8, 2016) ..................................26, 29

*Jackson v. Microsoft Corp.*,
    211 F.R.D. 423 (W.D. Wash. 2002) ......................................................................14, 15, 23, 27

*JDS Uniphase Corp. v. Jennings*,
    473 F. Supp. 2d 697 (E.D. Va. 2007) ...................................................................................17

*Kyko Global Inc. v. Prithvi Info. Sols. Ltd.*,
    No. C13-1034 MJP, 2014 WL 2694236 (W.D. Wash. June 13, 2014) ..................................31

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) ...................................................................................25, 29, 30

*Lipin v. Bender*,
    644 N.E.2d 1300 (N.Y. 1994) ..........................................................................................18, 27

*Maldonado v. New Jersey ex rel. Admin. Office of Courts-Probation Div.*,
    225 F.R.D. 120 (D.N.J. 2004) ..............................................................................................17

*Owens v. Office of Dist. Attorney for Eighteenth Judicial Dist.*,
    896 F. Supp. 2d 1003 (D. Colo. 2012) ..................................................................................28

*Payne v. Exxon Corp.*,
    121 F.3d 503 (9th Cir. 1997) ................................................................................................14

*Perna v. Elec. Data Sys., Corp.*,
    916 F. Supp. 388 (D.N.J. 1995) ..................................................................................... passim

*Richards v. Jain*,
    168 F. Supp. 2d 1195 (W.D. Wash. 2001)........................................................................19, 20

*Shawback v. Wells Fargo Bank, N.A.*,
    No. 3:11-cv-00243 JWS, 2013 WL 3306078 (D. Alaska July 1, 2013)..................................25

*Truckstop.net, LLC v. Sprint Corp.*,
    547 F.3d 1065 (9th Cir. 2008) ..............................................................................................28

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ..............................................................................................17

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
                                    -iv-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 5 of 49

# TABLE OF AUTHORITIES
## (continued)

Page(s)

**CASES**

*United States ex rel. Frazier v. Iasis Healthcare Corp.*,
392 F. App'x 535 (9th Cir. 2010) ...................................................................30, 31

*United States ex rel. Frazier v. IASIS Healthcare Corp.*,
No. 2:05-cv-766-RCJ, 2012 WL 130332 (D. Ariz. Jan. 10, 2012)....................17, 33

*United States ex rel. Hartpence v. Kinetic Concepts, Inc.*,
Nos. CV 08-1885-GHK (AGRx), CV 08-6403-GHK (ARGx), 2013
WL 2278122, (C.D. Cal. May 20, 2013) ...............................................................33

*United States ex rel. Holmes v. Northrop Grumman Corp.*,
No. 1:13cv85-HSO-RHW, 2015 WL 3504525 (S.D. Miss. June 3,
2015) ....................................................................................................................31, 32

*United States v. Quest Diagnostics Inc.*,
734 F.3d 154 (2d Cir. 2013)..................................................................14, 30, 32

*Xyngular Corp. v. Schenkel*,
No. 2:12-cv-876, 2016 WL 4126462 (D. Utah Aug. 2, 2016), *appeal
filed*, No. 16-4193 (10th Cir. Nov. 4, 2016) ................................................. passim

**STATUTES**

31 U.S.C. § 3729(a) ............................................................................................33

31 U.S.C. § 3730(b) ............................................................................................33

31 U.S.C. § 3730(b)-(d) ......................................................................................33

31 U.S.C. § 3733................................................................................................34

31 U.S.C. § 3733(d) ............................................................................................34

31 U.S.C. § 3733(k) ............................................................................................34

**RULES**

D. Ak. L.R. 37.1(c) .............................................................................................13

Fed. R. Civ. P. 26(a)(1)(A) ................................................................................19

Fed. R. of Civ. P. 37(a)(5) ..................................................................................40

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)

# TABLE OF AUTHORITIES
## (continued)

Page(s)

CASES

Fed. R. Civ. P. 37(b)(5)..............................................................................................40

Fed. R. Civ. P. 37(e) ............................................................................................29, 30

Fed. R. Civ. P. 37(e)(2)..............................................................................................25

OTHER AUTHORITIES

*Appropriate*, Oxford Am. Dictionary & Thesaurus 65 (2003) ...........................................6

*Misappropriate*, Am. Heritage College Dictionary 887 (4th ed. 2002)...........................................6

Restatement (Third) of the Law Governing Lawyers § 60 cmt. m (2000) ...................................19

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-vi-

Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 7 of 49

# I.    INTRODUCTION

As the Court knows, Relator tried to prevent Defendants from obtaining discovery about his taking, use, and disclosure of Defendants' privileged documents, castigating Defendants for "assum[ing] some sort of impropriety where none exists." Yet, once the Court ordered that discovery, it showed that Relator had misled the Court and confirmed Defendants' concerns: Relator told the Court he "did not 'surreptitiously take'" Defendants' privileged documents. He did. Relator assured the Court that his "counsel did not rely on the [privileged] documents." They did. Relator declared that he and his attorneys "destroyed their only copies of the [privileged] documents." They did not. Relator asserted that Berg & Androphy never even "received [the privileged documents] from Relator or had them in its case file." They did. Relator said he acquired the privileged documents in "the ordinary course of his employment." Not so. And for more than one year, Relator concealed his destruction of relevant evidence.

The evidence now shows that, for the past four years, Relator has deployed a series of abusive litigation tactics that have tainted this case beyond repair. While he was still working for Defendants, Relator secretly copied for use in this lawsuit more than two thousand pages of Defendants' confidential documents, including documents that the Court has determined to be privileged (the "Privileged Documents"). When he left his employment, Relator breached his contractual promises to Defendants by retaining this secret cache of privileged and other confidential documents, again for the purpose of using the documents against Defendants in this suit. Relator repeatedly mined this collection and sent selected documents to his attorneys. After the complaint was unsealed, Relator sent the entire collection to his attorneys, despite knowing some of the documents were privileged and being warned not to do so. Relator's attorneys reviewed the documents "in full," retained them for more than two months without notifying Defendants, and used them against Defendants in this litigation. This specifically includes the Privileged Documents, which Relator now admits his attorneys

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-1-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 8 of 49

"accessed . . . to prepare initial disclosures, and in preparing to challenge any assertion of privilege." And when Defendants finally learned of Relator's misconduct and sought discovery, Relator misled the Court and Defendants, destroyed relevant evidence, and obstructed Defendants' investigation, including violating this Court's Order that Relator provide complete deposition testimony about his "receipt, use, and disclosure" of the Privileged Documents, and refusing to produce any documents related to that subject.

Relator's pattern of willful misconduct has denied Defendants their right to have discovery conducted according to the Federal Rules of Civil Procedure, violated their attorney-client privilege, and undermined the False Claims Act and the fairness of these proceedings. Dismissal is the only remedy that will adequately sanction Relator's misconduct, cure the prejudice to Defendants, and deter such abusive litigation tactics. In the alternative, if the Court finds that a more developed record would help it decide a suitable sanction, Defendants ask that Relator be compelled to continue his deposition and produce the other discovery requested by Defendants as set forth below and in their proposed order.

## II.     BACKGROUND

**A.     Relator Secretly Copies Defendants' Privileged and Other Confidential Documents and Wrongfully Retains Them For Use in This Lawsuit**

Defendant Alutiiq, LLC ("Alutiiq") hired Relator in March 2008 as its Corporate Industrial Security Manager. Declaration of Amy Shimek, Dkt. 77-3 ("Shimek Decl.") ¶ 5. Relator agreed to return Defendants' property, including all of their files and documents, when his employment ended. *See id.* ¶ 6, Exs. A-B; Decl. of Angela R. Jones in Supp. of Defs.' Mot. to Dismiss as Sanction ("Jones Decl.") ¶ 37, Exs. Y-Z.

In May 2011, Alutiiq promoted Relator to Chief Compliance Officer, a position in the Legal Department reporting to the General Counsel. Shimek Decl. ¶ 5; Dep. Tr. of Ben Ferris ("Ferris Tr.") at 13:4-13, 17:10-12, 17:20-22, Jones Decl. ¶ 28, Ex. P. When he started using a desktop at work, Relator bought an external hard drive and arranged for Defendants' Information Technology Department to encrypt it so he could use it to work from home or

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-2-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 9 of 49

remote offices. Jones Decl. ¶ 20, Ex. M at 3; Ferris Tr. at 28:7-30:2, 194:5-8, 197:13-198:2. Relator's home computer was the only computer, aside from those belonging to Defendants, that Relator ever used to access this hard drive. *See* Jones Decl. ¶ 34, Ex. V at 5.

After attending a conference in July 2012, Relator began collecting confidential documents regarding Defendants' supposed non-compliance with Small Business Administration ("SBA") regulations. *See* Ferris Tr. at 28:1-13, 65:6-66:5. Relator copied these documents into a folder he created on his hard drive. *Id.* at 28:1-22, 65:13-21. By March 2013, Relator had retained counsel to file a complaint against Defendants. *Id.* at 52:13-19, 109:22-110:24. After contacting counsel about this lawsuit, Relator searched his Alutiiq Outlook email folders looking for documents he thought supported his claims; he copied those documents onto the hard drive. *See id.* at 62:11-63:25, 66:18-68:25, 174:10-18. Several of these documents were privileged. Jones Decl. ¶¶ 20, 27, Ex. M at 3, Ex. O at 4-5; *see* Ferris Tr. at 31:9-18, 34:2-9, 48:13-17, 53:4-9, 61:17-24, 63:6-13, 76:24-77:5.

Relator filed his Complaint under seal on May 30, 2013. Dkt. 1. He continued working for Defendants while surreptitiously collecting more documents he thought supported his claims to use in this case. *See* Ferris Tr. at 79:23-80:24, 82:5-9, 86:3-8, 87:13-88:4. He also shared his theory of non-compliance with other employees—without telling them he had sued Defendants—who sent him additional privileged documents that he copied to his hard drive. *See* Ferris Tr. at 43:16-25, 51:2-21, 75:6-76:3, 80:25-81:7, 84:9-17, 85:11-22, 173:12-174:5; *see also* Dkt. 73-2 at 2. Relator himself *requested* and obtained legal advice on these issues from Defendants' General Counsel, then secretly copied the communications with counsel to use in this case. *See* Ferris Tr. at 47:4-17, 58:2-59:20; *see also* Dkt. 73-2 at 2. On multiple occasions (Relator does not recall how many times), Relator reviewed the confidential documents he had copied to his drive, identified those he felt were "good examples" of conduct substantiating his claims, and forwarded those documents to his own counsel. Ferris Tr. at 124:2-126:5, 126:20-127:20.

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)

Relator resigned from Alutiiq in March 2014. Ferris Tr. at 12:16-22; Shimek Decl. ¶¶ 5, 13. Before leaving, he returned some documents belonging to Defendants by uploading them from his hard drive to Defendants' server and deleting them from the drive. Ferris Tr. at 44:15-45:22; Jones Decl. ¶ 20, Ex. M at 3. But, in violation of his contractual obligations to Defendants, he kept more than 2,000 pages of confidential documents for use in this case, including the Privileged Documents and roughly 20 other documents that Relator's counsel would later identify as potentially privileged. Ferris Tr. at 35:5-8, 53:10-18, 61:17-24, 77:11-14, 82:19-83:4, 86:9-15, 88:5-13; Jones Decl. ¶¶ 7, 27, 37, Ex. E, Ex. O at 5, Exs. Y-Z. Relator never told anyone at Alutiiq that he had copied and taken Defendants' confidential documents, including the Privileged Documents. Ferris Tr. at 43:6-25, 74:10-12, 82:10-13, 85:23-86:1, 89:12-90:25, 198:3-14.

Shortly after Relator resigned, the government elected not to intervene and his complaint was unsealed in April 2014. Dkt. 14, 15. In early 2015, the parties served their initial disclosures and document productions: Defendants on February 26, 2015, and Relator on March 2, 2015. *See* Jones Decl. ¶¶ 2-3, Exs. A-B. In his disclosures, Relator represented that his 494-page production was "a copy—or a description by category and location—*of all documents . . . that plaintiff has in its possession, custody, or control* and may use to support its claims." Jones Decl. ¶ 3, Ex. B at 1, 3 (emphasis added); Ferris Tr. at 143:13-144:20. Two weeks later, on March 17, 2015, Relator provided information missing from his initial production (i.e., audio files for which he had produced transcripts and unredacted versions of previously produced documents), but he did not disclose that his production was incomplete or that he possessed over 1,600 more pages of Defendants' confidential documents that he had not produced, including the Privileged Documents. *See* Jones Decl. ¶ 4, Ex. C.

## B. Relator Sends Defendants' Privileged Communications to His Attorneys, Who Review the Communications and Delay Notifying Defendants

On March 17, 2015, a Berg & Androphy paralegal directed Relator "to send her any case-related materials not already provided to counsel," so counsel could prepare "for Rule 26

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-4-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 11 of 49

initial disclosures." Jones Decl. ¶ 27, Ex. O at 2. Relator promptly created and sent to the paralegal a compact disc ("CD") containing *all* the documents belonging to Defendants that he had in his possession, including all the Privileged Documents. *Id.*

Relator worked in the Legal Department and knew that communications between the General Counsel and company management were protected by the attorney-client privilege. *See* Ferris Tr. at 17:10-12, 73:6-74:4. Relator's own attorneys cautioned him "early on" in the representation that, because he worked for the General Counsel, he needed to be careful about attorney-client privilege and should not send them privileged information. *Id.* at 128:1-129:1. Despite these warnings and his own familiarity with the attorney-client privilege, Relator took no precautions to protect potentially privileged documents while harvesting documents for use in this case. *Id.* at 129:14-130:8. Relator did not segregate the potentially privileged documents he was collecting on the hard drive; he did not delete potentially privileged documents from the hard drive; and he did not move potentially privileged documents into a separate folder on the hard drive. *Id.* Nor did Relator do anything to protect potentially privileged documents on the CD he sent to his counsel; he neither segregated the potentially privileged documents nor consulted with his counsel about potentially privileged documents. *Id.* at 137:12-138:17. Instead, he just copied all the privileged and confidential documents and sent them to Berg & Androphy. *Id.* at 130:9-131:10; Jones Decl. ¶ 27, Ex. O at 2.

The Berg & Androphy paralegal received the CD on March 19, 2015. She then transferred the documents to a flash drive that she sent on to Price Armstrong, another law firm representing Relator. Jones Decl. ¶ 27, Ex. O at 2-3. Price Armstrong attorneys received the flash drive a week later and set about reviewing Defendants' confidential and Privileged Documents "in full." *Id.* ¶ 27, Ex. O at 3. At no point during their review did Relator's counsel notify Defendants that Relator had sent them potentially privileged documents. *See id.* ¶ 8. Nor is there any evidence that Relator's counsel took any precautions to prevent the review of privileged documents, despite knowing that Relator worked in Defendants' Legal

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-5-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 12 of 49

Department and had access to privileged documents.  *Id.* ¶ 27, Ex. O at 2-6; Ferris Tr. at 128:1-129:1.

On June 8, 2015, Relator's counsel sent proposed custodians and search terms for an email review to Defendants.  Jones Decl. ¶ 6, Ex. D.  Two proposed custodians were Linda Reeves and Susan Hirka, and proposed search terms included "sign /15 (chang! replac! mov! nam!)," the relevance of which will be discussed in the section below.  *Id.*

### C. Defendants Finally Learn Relator Possesses Privileged Documents and Seek Discovery About His Misappropriation[1]

On the same day Relator circulated his proposed custodians and search terms, Relator notified Defendants for the first time that he would produce "the remaining relevant documents in his possession," separated into two folders.  Jones Decl. ¶ 7, Ex. E at 1. According to Relator, one folder contained 29 "directly relevant" documents that his counsel had reviewed and decided were not "protected from discovery" because they did not involve legal advice and "exceptions to any privilege apply."  *Id.*  The other folder contained 1,523 pages of Defendants' other confidential documents.  *Id.* ¶¶ 7, 11, Ex. E, Ex. G.

When the production arrived three days later, Defendants immediately reviewed the 1,617 pages in the production.  *Id.* ¶¶ 9-11, Exs. F-G.  The 29 documents Relator's counsel produced in the separate folder included an email from Susan Hirka; an email from Arlina (Linda) Reeves; and an email from an Alutiiq paralegal instructing another employee "to install signage within the corporate offices to identify which Alutiiq subsidiary the nearby employees are working for."  *Id.* ¶ 10; Dkt. 73-4 at 3, 24, 34.  Because these individuals and terms had not appeared anywhere else, *see* Jones Decl. ¶ 5, it appeared that Relator's counsel

---

[1] Relator has objected to Defendants' use of the term "misappropriation" to describe his misconduct.  *See, e.g.*, Dkt. 165 at 6.  "Appropriate" means "take possession of, esp. without authority."  *Appropriate*, Oxford Am. Dictionary & Thesaurus 65 (2003). "Misappropriate" means "[t]o appropriate wrongly."  *Misappropriate*, Am. Heritage College Dictionary 887 (4th ed. 2002).  Relator secretly copied and retained Defendants' documents, including the Privileged Documents, for his use in this litigation, in violation of his contractual obligations, and without permission.  That certainly fits the definition of misappropriation, if not something worse.

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-6-

Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 13 of 49

had used these "segregated" documents to draft proposed custodian and search term lists.

Of the 29 segregated documents, Defendants asserted privilege over nine, including two memoranda from Defendants' General Counsel to the CEO/President, one of which was expressly marked as "Attorney-Client Privileged" and "Confidential & Proprietary." *See* Jones Decl. ¶ 11, Ex. G; Dkt. 73-2 at 19.[2] Defendants demanded that Relator return the documents, requested information about his and his attorneys' access, use, storage, review, transfer, and disclosure of the documents, and asked him to appear for a deposition on these issues. *See* Jones Decl. ¶ 11, Ex. G. But Relator's response provided only partial information. *Id.* ¶¶ 12-13, Exs. H-I. And only after Defendants asked Relator and his counsel to *immediately* destroy the Privileged Documents did Relator and his counsel represent (incorrectly) that they had done so. *Id.* ¶ 15, Ex. K.

Because Relator's initial responses were evasive and incomplete, Defendants served interrogatories seeking basic information about Relator's and his counsel's access, use, storage, review, transfer, and disclosure of the Privileged Documents. *See id.* ¶ 14, Ex. J. After agreeing to notify Defendants by June 29 whether they would expeditiously respond to the interrogatories, Relator failed to do so and instead moved to compel production of the Privileged Documents. Jones Decl. ¶¶ 16-17, Ex. L; Dkt. 73. Because Relator still had not responded to Defendants' interrogatories, on July 2, Defendants moved to compel Relator to respond and to appear for a deposition. Dkt. 77. Relator finally served incomplete interrogatory responses on July 6, but refused to provide any further information, claiming the missing information was irrelevant and protected by work product or privilege. Jones Decl. ¶¶ 20-21, Exs. M-N. Relator also refused to appear for the requested deposition. Dkt. 85 at 3.

After the parties' discovery motions were fully briefed, the case was transferred to this Court. Dkt. 104. Two of the law firms representing Relator then withdrew: Price Armstrong

---

[2] The nine Privileged Documents were reviewed *in camera* by the Court, *see* Dkt. 199 (Order), and were described in Defendants' prior filings with the Court. *See* Dkt. 77-3.

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-7-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 14 of 49

and Frohsin & Barger. Dkt. 119. On October 5, 2015, this Court denied the parties' pending motions to compel *with leave to renew*, expressly noting "the potential need for supplemental briefing" on the motions. Dkt. 122 at 3.

The parties filed that supplemental briefing, renewing their motions to compel, on April 22, 2016. Dkt. 150, 152. In September 2016, this Court held that the Privileged Documents were protected by the attorney-client privilege and denied Relator's motion to compel their production. *See* Dkts. 180, 199. Despite Relator's objections that Defendants' motion to compel further discovery was "moot," "improper," and "a calculated distraction," Dkt. 165 at 5-6, the Court granted Defendants' motion and ordered Relator to provide more complete interrogatory responses and to appear for a deposition regarding the receipt, use, and disclosure of the Privileged Documents. Dkt. 199 at 13-14.

**D.      The Court-Ordered Discovery Shows Relator's Misappropriation and Cover-Up**

Relator served the supplemental interrogatory responses ordered by the Court on October 5, 2016. Jones Decl. ¶ 27, Ex. O. Relator appeared for the Court-ordered deposition on November 2, 2016. *Id.* ¶ 28. Defendants then served Requests for Production of Documents on Relator, seeking documents related to the taking, use, and transfer of the Privileged Documents and Defendants' other confidential documents. *Id.* ¶ 32, Ex. T. Relator's responses and deposition testimony make clear that he has engaged, and continues to engage, in a concerted effort to conceal the full extent of his misconduct.

**1.      Discovery Reveals that Relator Misled the Court and Defendants**

To avoid discovery, Relator represented to Defendants and the Court that: (1) he acquired the Privileged Documents and Defendants' other confidential documents "during the ordinary course of his employment"; (2) he and his attorneys never used the Privileged Documents "at any time," "in any way," or "for any purpose"; (3) his attorneys promptly segregated the Privileged Documents and produced them to Defendants "immediately" after learning of them; and (4) he and his attorneys destroyed all copies of the Privileged Documents at Defendants' request. *See* Dkt. 85 at 1, 4-5, 7-8; Dkt. 85-1 at 7, 14, 16-17; Dkt.

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-8-

Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 15 of 49

165 at 3.

The discovery ordered by the Court shows all these representations were false. Relator did not acquire the Privileged Documents "during the ordinary course of his employment"; he now admits he covertly copied them specifically to use against Defendants in this case, after talking with his counsel, and following a comprehensive search of his Alutiiq Outlook email folders for documents he thought supported his claims. Ferris Tr. at 62:6-63:25, 72:22-73:1, 76:24-77:14, 82:5-9, 86:3-15, 87:23-88:13, 89:15-25.

Although Relator unequivocally assured the Court and Defendants that he personally never used or relied on the Privileged Documents for any purpose, Dkt. 85 at 3; Dkt. 85-1 at 16, 17, his sworn testimony was hedged with professions of uncertainty and lack of recollection. Relator testified that he "probably" accessed at least some of the Privileged Documents after he consulted with counsel about this case, possibly to refresh his recollection, Ferris Tr. at 35:9-36:22, 49:11-50:162:11-63:25, 66:18-68:25; he could not recall how many times he did so, including whether it was once or more than ten times, *id.* at 35:2-22; he "probably" reviewed at least some of the Privileged Documents and knew their contents before the Complaint was filed, *id.* at 135:25-136:18; and he accessed documents from the hard drive and transferred them to his attorneys on an unknown number of occasions, *id.* at 126:3-127:20, 174:10-175:25.

Contrary to Relator's claims, his attorneys did not "immediately" produce the Privileged Documents to Defendants. Dkt. 85-1 at 7. In fact, they received the Privileged Documents from Relator no later than March 19, 2015, but failed to notify Defendants until June 8, 2015—meaning that they had the documents in their possession for more than two months without any disclosure to Defendants. Jones Decl. ¶¶ 8-9, 27, Ex. O.

Discovery also showed Relator's representations about his counsel's receipt and use of the Privileged Documents to be false. Relator specifically represented that Price Armstrong did not use the Privileged Documents "in the litigation" and that Berg & Androphy never

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)

-9-

received the Privileged Documents from Relator, never possessed them, and never had them in its case file. Dkt. 165 at 5. In fact, Relator now admits that Price Armstrong reviewed all the confidential documents taken by Relator from Defendants "in full," and they accessed the Privileged Documents in particular "to prepare initial disclosures" and "in preparing to challenge any assertion of privilege." *See* Jones Decl. ¶ 27, Ex. O at 3, 5. The evidence suggests that they also used the documents to develop discovery strategy, to identify witnesses, and to identify search terms and parameters for electronic discovery. *See id.* ¶¶ 5-6, Ex. D; *supra* section II.C. Further, Relator now admits he sent the Privileged Documents to Berg & Androphy on a CD in March 2015, that a Berg & Androphy paralegal transferred the documents from the CD to a flash drive (purportedly "without reviewing them in any detail"), then sent the flash drive to Price Armstrong for more detailed review, and that Berg & Androphy possessed the CD for more than three months, until June 24, 2015. Jones Decl. ¶ 27, Ex. O at 2-3.

Even Relator's repeated assurances that he and his attorneys destroyed all the Privileged Documents turned out to be incorrect. *See* Dkt. 165 at 3; Dkt. 85 at 2; Dkt. 85-1 at 14. Relator's counsel later informed Defendants that one of the Privileged Documents, in fact, had not been destroyed. *See* Jones Decl. ¶ 31, Ex. S. Instead, the document was uploaded to an "FTP" site and then distributed to at least three of the firms now representing Relator: Berg & Androphy, Motley Rice, and the Rabon Law Firm. *Id.* Although Relator's counsel learned of their continued possession of the document on the day before Relator's deposition, they did not advise Defendants of that fact until more than a week *after* the deposition. *Id.*

## 2. Relator Reveals that He and His Counsel Destroyed Evidence

Not only has discovery shown that Relator misled the Court and Defendants, it also shows that Relator has spoliated relevant evidence. Most importantly, Relator recently disclosed that in December 2015, two months after this Court noted the "potential need for

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-10-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 17 of 49

supplemental briefing" on Defendants' motion to compel evidence regarding Relator's access to and use of the Privileged Documents, Relator threw away his home computer—the only computer except Defendants' computers that he used to access his hard drive—"*dispos[ing] of [it] with other trash*." Jones Decl. ¶ 34, Ex. V at 5 (emphasis added). Relator did not disclose this spoliation until December 19, 2016, more than 12 months after it occurred. *Id.* Among other things, Relator did not disclose this spoliation in any of his filings with this Court, in his Court-ordered supplemental interrogatory responses, or in his Court-ordered deposition.

In addition to trashing his home computer, Relator also deleted the entire folder on his hard drive where he copied, stored, and accessed the Privileged Documents and other confidential documents using the now-destroyed home computer. *See* Ferris Tr. at 131:16-132:3, 154:25-157:6. This includes the more than two thousand pages of non-privileged confidential documents he took from Defendants, plus the entire folder structure of the hard drive, which, according to Relator's own testimony, memorialized which documents he sent to his counsel. *Id.* at 123:9-126:5, 131:16-132:3.

For their part, Relator's counsel also lost or destroyed the media used to store and transfer the Privileged Documents and Defendants' other confidential documents. In a telling use of the passive voice, Relator's counsel informed Defendants that the flash drive used to transfer the Privileged Documents and other confidential documents between law firms could "no longer be identified." Jones Decl. ¶ 34, Ex. V at 7. The Berg & Androphy computer to which the flash drive was connected "had its . . . hard drive replaced by the firm's IT vendor," and "returned under warranty to Dell." *Id.* And although Price Armstrong had reviewed and used the Privileged Documents and other confidential documents, neither Relator nor his other counsel apparently took any steps to preserve Price Armstrong's records—and the firm reportedly destroyed all of its files regarding this case after it was transferred to this Court and while Defendants' motion to compel discovery was pending. *Id.* ¶ 31, Ex. S at 1.

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-11-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 18 of 49

### 3. Relator Stonewalls His Court-Ordered Deposition and Refuses to Produce Any Related Documents

Even after the Court ordered Relator to supplement his discovery responses and appear for deposition, Dkt. 199, Relator has continued to obstruct discovery into his misconduct. Despite the Court's Order compelling Relator to testify about his "receipt, use, and disclosure" of the Privileged Documents, Relator repeatedly refused to answer questions at his deposition about those topics. Sixty-four times, Relator refused to answer Defendants' questions about relevant topics, including (1) what computers or other devices Relator used for work purposes, Ferris Tr. at 25:22-26:14; (2) what email address(es) Relator used to transmit documents to his attorneys, *id.* at 23:11-23, 176:10-177:1; (3) how Relator chose what documents to copy, *id.* at 33:9-17; (4) whether Relator asked his attorneys about transferring Defendants' privileged communications, *id.* at 69:2-25, 70:9-14, 74:14-23; (5) whether Relator's taking of the Privileged Documents violated his contractual obligations or Alutiiq's policies, *id.* at 91:23-92:16, 93:14-95:16, 103:4-104:16, 105:18-108:8; and (6) whether Relator used the copied documents for various purposes, such as to determine whether the *qui tam* complaint was accurate, to select exhibits to the complaint, or to provide documents to the Department of Justice, *id.* at 117:13-22, 119:11-120:11, 121:9-122:19. Those questions were directly relevant to Relator's receipt, use, and disclosure of the Privileged Documents; indeed, in many cases they related to Relator's own assertions in his supplemental interrogatory responses, such as his claims that he never used the Privileged Documents, the details of his disclosure and transfer of the Privileged Documents to his attorneys, and his multiple assertions that his lawyers never used the documents. *See* Jones Decl. ¶ 20, Ex. M; Dkt. 85, 165. Relator's counsel further stymied much of the questioning through a combination of lengthy speaking objections[3] and coaching the witness.[4] Defendants

---

[3] *See, e.g.*, Ferris Tr. at 11:20-12:14, 14:3-23, 19:2-25, 20:10-21:20, 95:24-102:20, 106:14-107:2.

[4] *See, e.g.*, Ferris Tr. at 32:5-10, 51:4-5, 54:4-7, 59:15-16, 70:6-7, 80:2-3, 80:12-15, 119:7-10, 124:8-11, 131:22-132:3, 134:21-24, 137:15-17, 162:9-13.

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)

asked Relator to continue his deposition in light of his counsel's instructions not to answer. Jones Decl. ¶ 33, Ex. U. Relator refused. *See id.*

Relator also flatly refused to produce *any* responsive documents or physical evidence regarding his taking, use, and disclosure of the confidential documents in response to Defendants' Requests for Production. *Id.* ¶ 34, Ex. V. These include: (1) the hard drive to which Relator copied the documents and where they were stored; (2) identification of the personal email account he used to send Defendants' documents to his counsel; (3) the device installation log from Price Armstrong's computer, showing when and how often they accessed the flash drive; and (4) communications with or among Relator and/or his attorneys regarding the Privileged Documents. Although Relator withheld many of the requests on grounds of privilege, Relator refused to produce a privilege log. *Id.* ¶ 36, Ex. X.[5]

## III.    AUTHORITY

### A.    Relator's Unfair and Abusive Litigation Tactics Call for Dismissal

The Court has the inherent power to dismiss a case to redress abusive litigation practices and ensure the orderly administration of justice. *See Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988). For dismissal to be proper, the misconduct must be "due to willfulness, fault, or bad faith" and must be related to "the matters in controversy." *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir.1995); *see also* D. Ak. L.R. 37.1(c) (requiring a finding of willful action before the court enters a sanctions order

---

[5] Counsel for Defendants and Relator met and conferred today regarding this motion. Relator continued to refuse to produce any documents or items in response to Defendants' Second Requests for Production. *See* Jones Decl. ¶¶ 38-40. Relator did offer for the first time to consider providing a limited privilege log identifying the communications between or among Relator and/or his counsel regarding Defendants' Privileged Documents. *Id.* Given that Relator's and his counsel's use, access to, and disclosure of, Defendants' confidential and privileged documents is relevant, Defendants are entitled to a more fulsome log listing all responsive documents withheld under a claim of privilege. But more importantly, Relator still refuses to produce any of the requested communications themselves.

In the same meeting, Relator also informed Defendants that he intends to produce *additional* documents. *Id.* As of this filing, Defendants have not received those documents. *Id.* Defendants may supplement the record to the extent Relator provides additional documents relevant to this motion.

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
                              -13-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 20 of 49

dismissing a claim or defense). If those threshold criteria are met, the Court must consider five factors before exercising its inherent power to dismiss: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Anheuser-Busch, Inc.*, 69 F.3d at 348. These factors "provide[] the district court with a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). Because the first two factors "generally favor the imposition of sanctions, and the fourth factor cautions against dismissal, 'the key factors are prejudice and the availability of lesser sanctions.'" *Jackson v. Microsoft Corp.*, 211 F.R.D. 423, 431 (W.D. Wash. 2002) (quoting *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990)).

Dismissal is appropriate when a litigant wrongfully obtains another party's privileged and other confidential documents for use in litigation. *See, e.g.*, *United States v. Quest Diagnostics Inc.*, 734 F.3d 154, 167 (2d Cir. 2013) (affirming dismissal without prejudice to the United States when *qui tam* relator relied on privileged and confidential information supplied by former in-house counsel to pursue claims under the False Claims Act); *Xyngular Corp. v. Schenkel*, No. 2:12-cv-876, 2016 WL 4126462, at *45 (D. Utah Aug. 2, 2016) (dismissing claims brought against corporation by founder who obtained sensitive, confidential, and possibly privileged documents from another employee in anticipation of litigation), *appeal filed*, No. 16-4193 (10th Cir. Nov. 4, 2016); *Jackson*, 211 F.R.D. at 431-33 (dismissing plaintiff's claims when he stole or purchased defendant's email messages containing confidential and privileged information); *Perna v. Elec. Data Sys., Corp.*, 916 F. Supp. 388, 398 (D.N.J. 1995) (dismissing plaintiff's individual claims because he surreptitiously reviewed and photocopied defendant's privileged documents). Moreover, the Court "may properly consider all of a party's discovery misconduct in weighing a motion to

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-14-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 21 of 49

dismiss." *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997).

For example, in *Jackson v. Microsoft*, the court dismissed the plaintiff's lawsuit against his former employer because of the plaintiff's discovery abuses, which included obtaining proprietary materials from his employer and then lying to the court about it. Shortly before leaving Microsoft's employment, and without Microsoft's permission, the plaintiff took emails, including privileged communications, as well as other proprietary and confidential information, which he transferred to his hard drive and accessed extensively. 211 F.R.D. at 426, 431. He then "intentionally removed and destroyed those portions of the e-mails which would identify the person who printed the document from an electronic format." *Id.* at 426. The plaintiff also "told an ever more elaborate series of lies about his misconduct." *See id.* at 431-32. The court found that dismissal was appropriate based on the plaintiff's "conduct in obtaining (and in some cases altering) this vast quantity of Microsoft's data," and his "secretive behavior and clear reliance on the stolen documents in the preparation of his case." *Id.* Dismissal was also required because "Jackson's astonishing pattern of deceptive acts and fraudulent testimony" had "undermined the truth-finding function of the Court beyond repair." *Id.*

Many parallels exist between the plaintiff's conduct in *Jackson* and Relator's conduct. In this case, Relator engaged in the following misconduct: (1) misappropriated the Privileged Documents and other confidential documents in plain breach of his contractual obligations and contrary to Defendants' policies; (2) failed to take any steps to segregate or protect the Privileged Documents; (3) shared the Privileged Documents and other confidential documents with his attorneys despite being cautioned not to share privileged communications; (4) used the Privileged Documents and Defendants' other confidential communications for strategic purposes in this litigation; (5) delayed notifying Defendants that he and his counsel possessed Defendants' privileged communications; (6) obstructed Defendants' attempts to discover relevant information about Relator's and his counsel's receipt, access, and use of the

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-15-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 22 of 49

Privileged Documents; (7) misled the Court and Defendants about his misconduct; and (8) intentionally destroyed evidence knowing full well it was relevant. Relator's misconduct was willful and in bad faith. It was directly related to the matters in controversy. It prejudiced Defendants. Lesser sanctions are insufficient. And it shows Relator is manifestly unfit for the extraordinary privileges and responsibilities of litigating claims on behalf of the United States under the False Claims Act. For these reasons, the Court should dismiss Relator's claims.

### 1. Relator Engaged in a Pattern of Willful Misconduct

The facts described above show no accident, but a pattern of willful misconduct.

#### a. Relator Willfully Misappropriated Defendants' Privileged and Other Confidential Documents and Shared Them with His Attorneys

Relator's misconduct began when he deliberately and surreptitiously copied Defendants' privileged and other confidential documents for the purpose of supporting his claims in this case. He made no effort to protect Defendants' privileged information, despite his position in the Legal Department and his understanding that communications with Defendants' General Counsel could be subject to attorney-client privilege. Relator was well aware of procedures that can be used to protect sensitive information; after all, part of his role was to oversee and manage Defendants' classified information policies, and to supervise Defendants' Industrial Security Program. *See* Ferris Tr. at 15:19-16:13. Yet he employed no such precautions while he secretly collected and copied documents to support his claims against Defendants—including communications with the General Counsel and one expressly marked "ATTORNEY-CLIENT PRIVILEGED." *See, e.g.*, *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) (finding bad faith where, as "a doctor and a frequent litigator," the defendant "would be familiar with the notion of privileged information and would know that he should not be intercepting confidential emails"); *Perna*, 916 F. Supp. at 399 (plaintiff "knew his conduct was wrong" partly because he was "a sophisticated businessman" who was "not a stranger to the litigation arena").

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-16-

Relator then deliberately breached his contractual obligations to Defendants by retaining their confidential and privileged documents after his employment terminated: he uploaded and deleted those of Defendants' documents that he "thought might be of value to the Defendants," but retained the documents he felt "supported the case." Jones Decl. ¶ 20, Ex. M at 3; *see, e.g.*, Ferris Tr. at 53:4-18. Such actions are improper. "Parties anticipating litigation may not engage in self-help by improperly gathering a potential adversary's property," *Xyngular*, 2016 WL 412462 at *36, yet that is what Relator did when he retained those of Defendants' privileged and confidential documents that he felt supported his claims. *See also JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 697, 702 (E.D. Va. 2007) (public policy in favor of whistle-blowing cannot "fairly be said to authorize disgruntled employees to pilfer a wheelbarrow full of an employer's proprietary documents in violation of their contract merely because it might help them blow the whistle on an employer's violations of law, real or imagined").

Finally, despite his own familiarity with the attorney-client privilege and his counsel's cautions about privileged documents, Relator took no precautions to safeguard Defendants' privileged communications, and ultimately sent his attorneys all the confidential documents he had covertly collected, including the Privileged Documents. Acting in the face of an instruction not to do so is paradigmatic evidence of intentional misconduct undertaken in bad faith. *See, e.g.*, *Maldonado v. New Jersey ex rel. Admin. Office of Courts-Probation Div.*, 225 F.R.D. 120, 135 (D.N.J. 2004) (declining to find bad faith when plaintiff provided privileged letter to his attorney because "there was seemingly client ignorance," but noting its appropriateness if "there was a knowing and deliberate client").

Relator's status as a relator "does not shield his bad faith conduct." *Xyngular*, 2016 WL 4126462, at *37, *42 (although "[w]histleblowers certainly are entitled to a number of protections," it would "swing[] the pendulum too far" to "giv[e] them far-reaching access to their litigation opponent's property"); *see also United States ex rel. Cafasso v. Gen. Dynamics*

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-17-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 24 of 49

*C4 Sys., Inc.*, 637 F.3d 1047, 1062-63 (9th Cir. 2011) ("[R]elators and their attorneys are not free to engage in misconduct without consequences merely because those consequences might chill others."); *United States ex rel. Frazier v. IASIS Healthcare Corp.*, No. 2:05-cv-766-RCJ, 2012 WL 130332, at *13 (D. Ariz. Jan. 10, 2012) (parties settled dispute over former Chief Compliance Officer relator's misappropriation of privileged documents for use in a False Claims Act suit by agreeing that he would "withdraw from any further participation in [the] case as a relator on behalf of the United States"). Relator's counsel recognized as much when they instructed Relator not to disclose to them privileged information. His disregard for this instruction, his surreptitious self-help discovery, and his unlawful retention of Defendants' documents all establish his willful misconduct and bad faith.

> **b.** **Relator and His Counsel Willfully Accessed and Used Defendants' Privileged Documents in This Litigation**

The evidence shows that Relator willfully accessed and used the Privileged Documents (and the other confidential documents) in this lawsuit.

Relator admits that he copied and retained the Privileged Documents with the express intent to use them to support his claims against Defendants in this lawsuit. He admits that he repeatedly sifted through Defendants' confidential documents on his hard drive (where the Privileged Documents were commingled with other confidential documents), identified those he thought were particularly helpful, and sent them to his attorneys. Ferris Tr. 124:2-25, 127:1-16. Although Relator said he could not recall when or how often he accessed the Privileged Documents in particular—and he destroyed evidence that would have allowed Defendants to obtain that information forensically—he admitted that he probably did so on some occasions, *see, e.g.*, Ferris Tr. at 35:9-22; 48:24-50:1, and it would defy credulity to think he *never* did so, given that he took Defendants' confidential documents expressly for this purpose and made no efforts to segregate potentially privileged documents. *See, e.g.*, *Lipin v. Bender*, 644 N.E.2d 1300, 1300 (N.Y. 1994) (affirming dismissal as sanction for plaintiff's "taking and use of the adversary's privileged documents").

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-18-

In any event, Relator certainly did send the Privileged Documents to his attorneys in March 2015, contrary to his attorneys' instructions and without taking any precautions to protect Defendants' privileged communications. And it is undisputed that his attorneys then reviewed the documents and used them in this lawsuit—including the Privileged Documents. In particular, Relator now admits that his attorneys received the documents from Relator, including the Privileged Documents, retained them for two months, reviewed them "in full," and in the process of reviewing them divided them into categories, including a "segregated" sub-set of documents they recognized Defendants would likely argue were privileged. Moreover, while in possession of the Privileged Documents, Relator's attorneys admittedly used them, "access[ing] the nine [Privileged Documents] after receiving them *to prepare initial disclosures, and in preparing to challenge any assertion of privilege."* Jones Decl. ¶ 27, Ex. O at 5 (emphasis added). This admission is especially damning, as a party's initial disclosures identify the evidence that a party may use to support its claims or defenses, including witnesses and documents. *See* Fed. R. Civ. P. 26(a)(1)(A). At minimum, then, Relator *admits* that his attorneys used the Privileged Documents that he sent to them to identify the evidence that Relator would use to support his claims.[6]

That conduct was improper. A lawyer has an obligation to take reasonable steps to avoid reviewing an opposing party's privileged communications, especially where the lawyer is on notice that the lawyer's client may have misappropriated such documents. *See Richards v. Jain*, 168 F. Supp. 2d 1195, 1200-02 (W.D. Wash. 2001). "[I]f any question ar[ises]" as to whether documents may be privileged, attorneys and their legal staff must immediately "cease reviewing documents." *Id.* at 1202. In addition to "refrain[ing] from further examination," attorneys should "immediately return" the apparently privileged documents to the holder of

---

[6] It is unclear exactly how Relator's counsel used the Privileged Documents to prepare initial disclosures two weeks after they were served: the admission raises more questions than it answers. Perhaps they meant to supplement rather than prepare the initial disclosures? Perhaps some other use? Relator had no answers. Ferris Tr. at 150:18-154:12.

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-19-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 26 of 49

the privilege.  *Furnish v. Merlo*, No. 93-1052-AS, 1994 WL 574137, at *9 (D. Or. Aug. 29, 1994); *see also* Restatement (Third) of the Law Governing Lawyers § 60 cmt. m (2000) ("if the receiving lawyer is aware that disclosure" of an opposing party's confidential information was "made in breach of trust by a lawyer or other agent of the opposing person, the receiving lawyer must not accept the information").

Instead, Relator and his attorneys—well aware of Relator's position in Defendants' Legal Department and their obligation not to use an opponent's privileged documents— apparently failed to employ any precautions or make any effort to prevent the review of potentially privileged documents.  Such omissions are "a failure of reasonable care, approaching recklessness."  *Richards*, 168 F. Supp. 2d at 1202 (castigating attorneys for failing to inquire whether their client had privileged information and failing to ensure privileged materials would not be reviewed).

Not only did Relator and his attorneys fail to employ any measures to guard against the review and use of Defendants' privileged communications, they violated their obligations yet again once they identified the Privileged Documents because they retained the documents, continued their review, and failed to immediately notify Defendants.  *See Gifford v. Target Corp.*, 723 F. Supp. 2d 1110, 1119 (D. Minn. 2010) (disqualifying law firm representing plaintiff because it retained privileged documents "for more than a month" instead of "ceasing its review, immediately informing [defendant] it was in possession of the privileged documents, and returning the documents").  A unilateral determination of privilege does not excuse their conduct.  *See, e.g.*, *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001) (rejecting argument that counsel could retain and review opposing parties' privileged communications because counsel believed the opposing parties had waived any applicable privilege); *Arnold v. Cargill Inc.*, No. 01-2086 (DWF/AJB), 2004 WL 2203410, at *10 (D. Minn. Sept. 24, 2004) (an attorney is prohibited "from conducting his or her own privilege review of documents belonging to a corporation he or she is preparing to sue"); *Furnish*, 1994

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-20-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 27 of 49

WL 574137, at *9 (attorney's retention of defendant's privileged memorandum surreptitiously obtained by the plaintiff was "inexcusable" even if "the asserted attorney-client privilege may not have attached to the . . . memo, or may have been waived").

And most egregiously, not only did Relator and his attorneys continue to possess Defendants' Privileged Documents, Relator admits that his attorneys used them against Defendants in this lawsuit. Jones Decl. ¶ 27, Ex. O, at 5. And the evidence strongly suggests that Relator's attorneys likely relied on the Privileged Documents even more extensively than Relator has admitted, including to develop discovery strategy, such as identifying email custodians and search terms. Relator's counsel segregated 29 of the documents Relator provided into a separate folder, treating all documents in that folder as equivalent. *See* Dkt 97 at 7; Dkt. 150 at 10 (arguing that if the nine contested documents were privileged, then the other documents segregated by Relator's counsel "would necessarily be privileged as well"). Relator's counsel must have relied on the segregated documents to draft proposed search term and custodian lists: how else would they have identified Susan Hirka and Linda Reeves, or come up with the far-removed "sign" search term? *See supra* section II.C. Because the record shows Relator and his counsel used documents they *believed* to be potentially privileged, it would be incredible to believe that they happened to avoid reviewing the very documents this Court ultimately determined to be privileged. But even without that additional evidence, Relator's own admissions show that he and his counsel willfully and improperly accessed and used Defendants' Privileged Documents in this lawsuit.

### c. Relator Sought to Cover Up His Misconduct by Misrepresenting Facts to Defendants and the Court and Obstructing Discovery

In seeking to avoid discovery into his receipt, use, and disclosure of the Privileged Documents, Relator assured the Court that Defendants were making much ado about nothing. Dkt. 165 at 4 (no breach and no harm). He mocked Defendants for creating "such drama," and even scolded Defendants for their "disappointing behavior" in not accepting "the solemn representation[s] of [a] fact" made by Relator's counsel. *Id.* at 3-4.

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)

-21-

But virtually all Relator's representations and assurances were false.  Relator did not copy the Privileged Documents to his hard drive "with the consent of the company" or "during the ordinary course of his employment" as he told the Court and Defendants.  Dkt. 165 at 3; Dkt. 85 at 1; Dkt. 85-2 at 3.  Rather, after talking with his attorneys about this lawsuit, Relator covertly searched for and copied those documents to an external hard drive for the purpose of supporting his claims in this case and retained them without Defendants' consent.

Relator's deposition testimony also did not support his prior unequivocal statements that he had never used the Privileged Documents "for any purpose."  Dkt. 165 at 3; Dkt. 85-1 at 16, 17.  Under oath, Relator hedged about using the Privileged Documents, admitting he "probably" accessed and reviewed at least some of them after contacting counsel about this case, possibly to refresh his recollection.  Ferris Tr. at 35:9-36:22, 49:11-50, 62:11-63:25, 66:18-68:25.  And even Relator's repeated assurance that he and his attorneys destroyed all the Privileged Documents was incorrect:  in June 2015, Price Armstrong (purportedly inadvertently) uploaded one privileged communication to an FTP site and distributed the link to Relator's other law firms, which downloaded it and retained it until November 2016.  *See* Dkt. 165 at 3; Dkt. 85 at 2; Dkt. 85-1 at 14; Jones Decl. ¶ 31, Ex. S.

Most troubling, Relator misrepresented his attorneys' handling of the Privileged Documents, telling the Court his attorneys did not use the documents, but promptly segregated them and "immediately" produced them to Defendants.  Dkt. 85-1 at 7, 16, 17; *see also* Dkt. 85 at 7.  Relator even called out his law firms by name.  Price Armstrong, he said, did not use the Privileged Documents "in the litigation."  Dkt. 165 at 5.  And Berg & Androphy, he said, never received the Privileged Documents from Relator, never possessed them, and never had them in its case file.  *Id.*

All false.  Relator's attorneys possessed the Privileged Documents for more than two months without any disclosure to Defendants, reviewed the Privileged Documents "in full,"

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-22-

Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 29 of 49

and used the Privileged Documents at least to prepare Relator's initial disclosures and to prepare to challenge the privilege claims that they knew were coming—contrary to Relator's prior claims that his attorneys never used the Privileged Documents in this litigation "at any time," "in any way," or "for any purpose." Dkt 85 at 4, 7; Dkt. 85-1 at 18; Dkt. 165 at 3, 5. Relator said Berg & Androphy never received the Privileged Documents "from Relator or had them in its case file," Dkt. 165 at 5, but it was *at Berg & Androphy's direction* that Relator sent *to Berg & Androphy* the CD containing those same documents. Jones Decl. ¶ 27, Ex. O at 2-3. And despite Relator's representation that Berg & Androphy had "searched for the [Privileged Documents] extensively but could not find them or any information to suggest ever having had them," Dkt. 165 at 5, at least one of those documents was present on Berg & Androphy's system *even at the time Relator made this representation*. *See* Jones Decl. ¶ 31, Ex. S.

Finally, even after the Court ordered Relator to provide Defendants' requested discovery, he continued to stonewall Defendants' investigation and provide false information. Only a month before revealing the destruction of his home computer, Relator's counsel instructed him not to answer questions at his deposition about whether he used any computers or removable devices for work purposes. *See* Ferris Tr. at 23:11-24:8, 25:22-26:14. When he was willing to answer, he could not recall connecting the hard drive to his home computer and said under oath "I didn't do work on my home computer." *Id.* at 30:10-18. By contrast, in July 2015—before he threw away his home computer—he verified an interrogatory stating that one of the reasons he purchased the encrypted hard drive in the first place was "to enable him to work from home." Jones Decl. ¶ 20, Ex. M at 3. And indeed, the month after his deposition, he disclosed that his home computer was "the only computer to which the drive was connected (other than computers within Defendants' custody or control)." *Id.* ¶ 34, Ex. V.

Relator's secretive behavior and blatant disregard for the truth further evinces his

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)

-23-

willful misconduct and bad faith.  *See Jackson*, 211 F.R.D. at 432.

### d.     Relator Willfully Spoliated Evidence

If any questions remain regarding Relator's willfulness and bad faith, his intentional destruction of evidence removes all doubt.  The record shows that Relator and his counsel have repeatedly destroyed evidence of his misappropriation.

Most egregious is the trashing of Relator's home computer.  In December 2015—six months after Defendants first objected to Relator's misappropriation of their privileged documents, five months after Defendants filed their motion to compel, and two months after this Court suggested supplemental briefing was needed on that motion—Relator "replaced and disposed of [his home computer] with other trash."  Jones Decl. ¶ 34, Ex. V at 5. Relator's home computer was the *only* computer outside Defendants' control to which he connected his hard drive containing the Privileged Documents, yet he threw it away *while the parties were in the middle of their dispute* over Defendants' requests for evidence and information about his misappropriation of those documents.  And he never said a word about his destruction until a *year later*:  he threw away the computer in December 2015, but did not inform the Court or Defendants of this destruction in motion practice about these issues in 2016, in his Court-ordered supplemental interrogatory responses served in October 2016, or at his Court-ordered deposition in November 2016.[7]

Relator's destruction of evidence did not stop there.  Relator also deleted *everything*, not only the Privileged Documents, from the hard drive folder where he stored Defendants'

---

[7] Indeed, Relator refused to answer deposition questions that might have led Defendants to discover his spoliation.  *See, e.g.*, Ferris Tr. at 25:22-26:14 (refusing to answer questions about what computers or devices Relator used for work purposes).  And when pressed, he suggested (wrongly) that he did not access the hard drive from his home computer.  *Id.* at 30:7-18.  Only when Defendants served specific Requests for Production calling for information from any computer used to access the hard drive did Relator finally admit that (1) he accessed the hard drive from his home computer; (2) his home computer was the only computer he used to access the hard drive (other than Defendants' computers); and (3) Relator threw away his home computer with "other trash" in December 2015.  Jones Decl. ¶ 34, Ex. V at 5.

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-24-

documents.[8]  Even if the parties had not been disputing Relator's misappropriation of Defendants' documents, he was obliged to preserve that folder, as he had produced from it thousands of pages he described as the documents he would use to support his claims and as "relevant documents in his possession."  *See* Jones Decl. ¶ 7, Ex. E; *see also* Dkt. 70 at 4-5 ("[N]othing in this Stipulation shall eliminate or alter any Party's obligation to retain native format copies, including associated metadata, of all documents produced in this litigation . . . .").  Given that the documents he misappropriated were the subject of a dispute, his massive deletion can only be willful spoliation.

Spoliation occurs when "(1) the evidence in question was in the control of one party, (2) the evidence is relevant to a claim or defense, (3) the evidence has been destroyed, and (4) the duty to preserve the evidence was reasonably foreseeable to the party."  *Shawback v. Wells Fargo Bank, N.A.*, No. 3:11-cv-00243 JWS, 2013 WL 3306078, at *1 (D. Alaska July 1, 2013) (citation and internal quotation marks omitted).  "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were *potentially* relevant to the litigation before they were destroyed.'"  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)).  Here, Relator's home computer and hard drive were entirely in his control: he knew that he had stashed the Defendants' documents on his hard drive, connected the drive to his home computer, and used his home computer to access (and presumably review and transfer) the Privileged Documents.  By December 2015, Relator had been on notice for months that evidence regarding his access to or use of the Privileged Documents was relevant and needed to be preserved.  And Relator was aware that the non-privileged documents on his hard drive were relevant—he had said as much to Defendants.  *See* Jones Decl. ¶ 7, Ex. E.

---

[8] Defendants requested that Relator and his counsel destroy their copies of the Privileged Documents.  They never suggested that they destroy the 2,000 other pages of documents that Relator misappropriated from Defendants, much less the hard drive's entire folder structure.

Especially in light of his knowledge and experience regarding appropriate handling of sensitive information, he was well aware his home computer and the hard drive contained evidence of his use of and access to the documents he misappropriated and thus should have been preserved. These circumstances show Relator's spoliation was willful and undertaken "with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2).

In cases involving the loss of evidence, there is a spectrum of behavior and willfulness. On the one hand is the inadvertent failure to preserve information, such as electronically stored information subject to an automatic retention schedule. *See, e.g.*, *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, No. 15-cv-1893-HRL, 2016 WL 5870218, at *4 (N.D. Cal. Oct. 7, 2016) (declining to sanction defendant for "fail[ing] to ensure the preservation of phone records" that defendant's phone company "destroyed in the ordinary course of business"). On the other hand are cases, like this one, involving the intentional destruction of evidence. *See, e.g.*, *Internmatch v. Nxtbigthing, LLC*, No. 14-cv-05438-JST, 2016 WL 491483, at *4 n.6, *10 (N.D. Cal. Feb. 8, 2016) (holding that defendants willfully spoliated evidence with intent to deprive the other party of its use when they discarded computers containing relevant evidence by "throw[ing] [them] in the garbage"). It is the epitome of bad faith and willful misconduct for a party to intentionally discard his computer "with other trash" while in the middle of discovery, indeed in the middle of a discovery dispute about Relator's possession and use of the Privileged Documents, which had been accessed on that computer, and then to conceal that destruction for an entire year.

Relator's willful destruction of his home computer and deletion of the contents of the hard drive are his most extreme spoliation of evidence, but the spoliation in this case extends far further than those two incidents. The flash drive that his counsel used to share the Privileged Documents among themselves "can no longer be identified." The hard drive of the computer that Relator's counsel used to load the CD Relator created that contained the

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-26-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 33 of 49

Privileged Documents, and to create the flash drive, has been "replaced by the firm's IT vendor" and "returned under warranty to Dell." Price Armstrong, the attorneys who reviewed the Privileged Documents "in full" and used them in this litigation, destroyed "all client documents" after the case was transferred. The only remaining evidence of Relator's counsel's access to and use of the Privileged Documents is possibly a device installation log from Price Armstrong's computer, but Relator has refused to disclose whether it still exists, let alone produce it. And the *only* remaining physical device associated with Relator's misappropriation of the Privileged Documents and Defendants' other confidential documents appears to be the encrypted hard drive itself—which Relator refuses to produce. This extensive spoliation of evidence, on top of Relator's other misconduct, warrants the severest of sanctions.

### 2.     Relator's Misconduct Is Closely Tied to the Matters in Controversy

Relator's own testimony and representations establish that his misconduct is closely connected to the matters in controversy in this case. Relator testified that he copied Defendants' privileged and confidential documents for the purpose of supporting his claims in this litigation. *See, e.g.*, Ferris Tr. at 53:4-17, 86:3-15. Second, Relator has already represented to the Court that the Privileged Documents are "indisputably relevant documents." Dkt. 171 at 2. While Relator may try to walk back his relevance assertion now that the Court has rejected his argument that they are not privileged, Relator's "own recognition that the information would yield significant litigation advantage to [him], and consequent disadvantage to [his] adversary, undercuts any suggestion that the documents were immaterial." *Lipin*, 644 N.E.2d at 1304. Finally, Relator's attempted cover-up and misrepresentations to Defendants and the Court call this entire proceeding into question, as in *Jackson v. Microsoft*. The court there found that "Jackson's astonishing pattern of deceptive acts and fraudulent testimony" meant there could be "no assurance that a trial in this matter would indeed be a fact-finding endeavor." 211 F.R.D. at 431-32. Relator's willingness to

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-27-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 34 of 49

misappropriate and then destroy relevant evidence and misrepresent facts to the Court and Defendants warrants the same conclusion here.

### 3. Defendants Have Been Irreparably Prejudiced by Relator's Misconduct

We start from the premise that "it is certainly prejudicial to collect an opposing party's critical documents without authorization and then use them in litigation to gain an unfair advantage." *See, e.g.*, *Xyngular*, 2016 WL 4126462 at *39. That is what happened here: it is an unfair tactical advantage to obtain secret pre-lawsuit discovery in violation of the party's employment agreement; it is an unfair tactical advantage to obtain privileged documents that are exempt from discovery; it is an unfair tactical advantage to dispose of relevant evidence in the trash; and it is most certainly an unfair tactical advantage to misrepresent the facts to the opposing parties and to the Court in an attempt to cover up the misconduct.

#### a. Relator's Use of the Privileged Documents Prejudiced Defendants

Relator admits that his counsel accessed and used Defendants' privileged communications to support this litigation against Defendants. *See* Jones Decl. ¶ 27, Ex. O at 5 ("Nick Armstrong and Oscar Price accessed the nine [privileged] emails after receiving them to prepare initial disclosures, and in preparing to challenge any assertion of privilege, until they destroyed the nine emails at Defendants' counsel's request."). The record suggests that Relator's counsel further used the "segregated" documents, which included the Privileged Documents, to develop custodian lists, search terms, and discovery strategy. *See also supra* section III.A.1.b. As a result, Relator's access to and use of the Privileged Documents has irreparably prejudiced Defendants. *See Truckstop.net, LLC v. Sprint Corp.*, 547 F.3d 1065, 1068 (9th Cir. 2008) (when privileged material is inadvertently disclosed, "irreparable harm from the disclosure . . . has already taken place"); *Owens v. Office of Dist. Attorney for Eighteenth Judicial Dist.*, 896 F. Supp. 2d 1003, 1014 (D. Colo. 2012) ("[T]he general injury or harm caused by the improper disclosure of material subject to the attorney-client privilege is irreparable.").

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-28-

Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 35 of 49

**b.** **Relator's Spoliation of Evidence Prejudiced Defendants**

Relator's disclosure of the Privileged Documents to his counsel prejudiced Defendants. But here the prejudice is greater than "mere" disclosure and use of those documents. The greater prejudice is from Relator's spoliation of the best evidence showing the full extent of his access to and use of the Privileged Documents, namely, his home computer. By destroying his home computer, Relator has prevented Defendants from obtaining forensic evidence of his access to and use of their privileged and other confidential documents. *See* Declaration of Ashraf Massoud ("Massoud Decl.") ¶ 18. A computer automatically stores data showing how a user accessed, used, and transferred files on a connected device (such as an external hard drive), but this information was lost when Relator threw his home computer away. *Id.* ¶¶ 5-9. Relator obstructed a forensic analysis of his misappropriation by deleting the folder structure and *all* contents of the hard drive folder where he stored Defendants' confidential documents, rather than limiting his deletion to the Privileged Documents. *See id.* ¶ 14. And even if Defendants are able to obtain some of the information he deleted from the hard drive—which he refuses to produce—that information cannot replace the digital evidence that was available only on his computer, such as data showing when and for how long he connected the hard drive to his home computer, whether he copied or transferred any files from the hard drive, and whether he accessed files on the hard drive without modifying or saving them. *See id.* ¶¶ 10-12. Information regarding the timing or volume of Relator's access and use of the Privileged Documents cannot be supplied through testimony, as Relator could not recall such information at his deposition.

Relator used the word "disposing" to describe throwing his computer away in the middle of this case; his unilateral "disposition" prejudiced Defendants by depriving them of the ability to investigate the extent of his access to and use of their privileged and confidential documents. *See Leon*, 464 F.3d at 960 (defendant was prejudiced by plaintiff's deletion of files on his laptop because "there was no way of recreating the contents of [those] files");

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-29-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 36 of 49

*Internmatch*, 2016 WL 491483, at *12 (plaintiffs were prejudiced when defendants discarded the computer containing the only electronic copies of key documents because they could not "test their claim that the documents were 'concocted'" without using the electronic copies to "determine the date the files were created, the history of the modifications made to the files, and other relevant information").   Relator's spoliation has irreparably tainted these proceedings to Defendants' detriment.

### c.    Relator's Misconduct Warrants an Evidentiary Presumption that Defendants Were Prejudiced

When one party spoliates evidence with "the intent to deprive another party of the information's use in the litigation," the Court may "presume that the lost information was unfavorable to the party."  Fed. R. Civ. P. 37(e).  The victim need not prove prejudice because the intentional spoliation itself supports "an inference that the lost information was unfavorable to the party that intentionally destroyed it."  Fed. R. Civ. P. 37(e), advisory committee's notes to 2015 amendments; *see also Leon*, 464 F.3d at 959 (advising skepticism of a spoliating party's assertions that destroyed documents are irrelevant because their non-existence prevents their relevance from being clearly ascertained).  Relator's decision to throw away his computer in the middle of a discovery dispute about documents he used the computer to access, warrants a presumption that the "lost" information was unfavorable to Relator.

The additional acts of evidence destruction committed by Relator and his counsel further bolster the appropriateness of this presumption:   (1) Relator's deletion of *all* documents he stored in the folder he maintained for this litigation, not only the Privileged Documents; (2) the disappearance of the flash drive used to transfer the Privileged Documents and other confidential documents between Relator's law firms; (3) Berg & Androphy's failure to preserve the hard drive of the computer used to copy the Privileged Documents and other confidential documents from the CD to a flash drive; and (4) Price Armstrong's decision to delete all client data after the case was transferred to this Court, but while this discovery

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)

dispute remained pending. *See also Perna*, 916 F. Supp. at 401 (noting that although "one can never know whether there was actual prejudice" arising from plaintiff's surreptitious access to and review of opposing counsel's documents, "prejudice must be presumed or at the very least not eliminated as to the defendant").

Finally, Relator's misconduct has caused "great prejudice to the litigation process." *Id.* ("Our system is built on rules and procedures. Litigants who bring matters before this court must conduct themselves in an appropriate fashion."). This is not the first ethical lapse by a relator in a False Claims Act case. *See, e.g.*, *Quest Diagnostics*, 734 F.3d at 167 (upholding dismissal of False Claims Act case because allowing relators "to proceed with the suit would allow" taint of improper use of defendant's privileged documents "to proceed into trial") (citation omitted); *United States ex rel. Frazier v. Iasis Healthcare Corp.*, 392 F. App'x 535, 538 (9th Cir. 2010) (rejecting relator's argument that return of defendant's documents mooted its motion for sanctions because the argument "begs the question as to whether there was abuse of the judicial process that tainted the proceedings before the documents were returned"); *United States ex rel. Holmes v. Northrop Grumman Corp.*, No. 1:13cv85-HSO-RHW, 2015 WL 3504525, at *10 (S.D. Miss. June 3, 2015) (where relator breached ethical duties he owed defendant, his former client, allowing case to move forward "would greatly prejudice [defendant] because the case would be tried on a record developed primarily through the fruits of [relator]'s unethical conduct").

### 4. Dismissal Is the Only Effective Remedy and Will Not Prejudice the Real Party in Interest, the United States

Sanctions for "wrongfully obtain[ing] documents outside the normal discovery process" include "dismissal of the action, the compelled return of all documents, restrictions regarding the use of the documents at trial, disqualification of counsel and monetary sanctions." *Kyko Global Inc. v. Prithvi Info. Sols. Ltd.*, No. C13-1034 MJP, 2014 WL 2694236, at *2 (W.D. Wash. June 13, 2014) (citation omitted). Here, any sanctions less severe than dismissal would fail to effectively "punish the offending party for his

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-31-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 38 of 49

wrongdoing, remedy the prejudice to and harm suffered by the adverse party and the judicial process, deter future litigants from engaging in similar conduct, and inspire confidence in the integrity of the judicial process." *Xyngular*, 2016 WL 4126462, at *45.

First, because Relator *himself* undertook the majority of misconduct in this case, attorney disqualification "would not sufficiently deter or punish the misconduct" because Relator "would still be able to pursue his claims." *Id.* at *44; *Perna*, 916 F. Supp. at 402 (dismissal was an appropriate remedy because "[t]he culpable individual in the instant case is the plaintiff himself" and he "himself must bear the consequences of his deliberate actions").

Second, the mere return of Defendants' documents or preclusion of their use at trial would be toothless here. Return or deletion does not remedy the "abuse of the judicial process that tainted the proceedings before the documents were returned" or deleted. *Frazier*, 392 F. App'x at 538 (citing *Gomez*, 255 F.3d at 1133-34). And preclusion is no remedy *at all* where, as here, several of the documents are privileged, so Relator could not have used them at trial and Relator's counsel would never have received them in discovery. *See Xyngular*, 2016 WL 4126462, at *43 ("Merely excluding the documents would allow potential litigants to circumvent the discovery process to improperly obtain evidence, use that evidence to support their claims, and then maintain those claims even if their misconduct is uncovered.").

Third, monetary sanctions alone "would signal that litigants can circumvent the discovery process and still pursue their claims as long as they pay a fine." *Id.* at *44; *see also Perna*, 916 F. Supp. at 400 (imposing monetary sanctions alone "would be conveying a message to litigants that money could cure one's improper acts"). This danger is particularly acute because the amounts sought by Relator in this action would likely dwarf any sanction, as Relator seeks treble damages and civil penalties under the False Claims Act for his claims, which he asserts implicate "every invoice" Defendants submitted to the government, presumably for many years. *See* Dkt. 202 (Second Amended Complaint) at 46; Dkt. 142 at 2.

Finally, the United States is the real party in interest. Dismissing *Relator*'s complaint

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-32-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 39 of 49

does not preclude these claims from being litigated if the real party in interest wishes to do so. *See, e.g.*, *Quest Diagnostics*, 734 F.3d at 167 (dismissal was appropriate in False Claims Act *qui tam* action in part because relator was "not the real party in interest" and the government was not precluded from bringing suit). Accordingly, "the social interests in allowing [Relator] to continue to participat[e] in this case are minimal." *Holmes*, 2015 WL 3504525, at *10. Because Defendants seek dismissal of Relator's Complaint without prejudice to the United States, granting that relief appropriately sanctions Relator's conduct without depriving the government of its ability to litigate its case and obtain a determination on the merits.

### 5. Relator's Misconduct Shows that He Should Not Be Allowed to Represent the Government as a *Qui Tam* Relator

This case involves an additional consideration favoring dismissal: Relator's role as a *qui tam* relator. Under the False Claims Act, a relator occupies a privileged position as the representative of the United States government, which is the real party in interest. A relator is permitted to assert claims belonging to the government, conduct the litigation on behalf of the government, act for the government's benefit, and share in any award. *See* 31 U.S.C. § 3730(b)-(d). A relator enjoys procedural advantages, such as filing his or her claims under seal—meaning a defendant has no way to protect itself from a rapacious relator prior to the unsealing and service of the complaint. *See id.* § 3730(b). And a successful relator benefits from some of the most potent remedies and punitive sanctions available under civil law, including treble damages and civil penalties. *See id.* § 3729(a).

Relator's misconduct in this case is utterly incompatible with his privileged position of trust and responsibility. No government lawyer would be allowed to (1) misappropriate a defendant's confidential documents, much less privileged communications between a defendant's general counsel and its senior management; (2) use misappropriated privileged and confidential documents against a defendant in litigation; (3) mislead the court and the defendants; (4) spoliate evidence; and (5) obstruct discovery about the misconduct. Any one of those actions would be grounds for severe sanctions; engaging in all of them would be

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-33-

beyond the pale. So too for Relator: his misconduct cannot be squared with the awesome privileges that come with standing in the shoes of the United States. *See United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, Nos. CV 08-1885-GHK (AGRx), CV 08-6403-GHK (ARGx), 2013 WL 2278122, at \*2-3 & n.2 (C.D. Cal. May 20, 2013) (disqualifying relator's counsel for failing to contact the court or defendant's counsel regarding their receipt of defendant's privileged documents from relator and using defendant's privileged documents in *qui tam* litigation); *Frazier*, 2012 WL 130332, at \*15 (holding that "Qui Tam Counsel did engage in misconduct by withholding [defendant's privileged] documents and failing to seek either a court ruling while the case was sealed or failing to contact [defendant's counsel] after the seal was lifted").

Relator's misconduct also undermines the False Claims Act itself. In the False Claims Act, Congress established a *lawful* mechanism for the government to obtain documents and other evidence from a defendant prior to the unsealing of a complaint, namely, the civil investigative demand ("CID"). *See* 31 U.S.C. § 3733. Congress laid out detailed rules governing CIDs, specifying who may issue a CID; the required contents; service and enforcement; and the use, return, and disclosure of any evidence obtained. *Id.* Congress put specific limits on CIDs, including identifying classes of protected materials (including privilege) and exempting information obtained through a CID from disclosure under FOIA. *Id.* § 3733(d), (k). By misappropriating and using Defendant's confidential and Privileged Documents, Relator undermined and frustrated the False Claims Act itself. Why have such extensive rules and protections for CIDs, if Relator can circumvent them simply by helping himself to thousands of pages of Defendants' confidential documents, including privileged communications?

For all of these reasons, no sanction short of dismissal will effectively cleanse this proceeding of the taint Relator has already visited upon it. *See Xyngular*, 2016 WL 4126462, at \*45. Defendants therefore ask this Court to dismiss the case with prejudice as to Relator.

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-34-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 41 of 49

**B.** **In the Alternative, Relator Should Be Compelled to Produce Additional Discovery**

The record of Relator's conduct over the past four years warrants dismissal. But if the Court believes an even more developed factual record is appropriate, Defendants request that Relator be compelled to continue his first deposition (without prejudice to a subsequent deposition) and to produce whatever evidence remains after Relator's spoliation that is responsive to Defendants' Second Set of Requests for Production ("Requests").

**1.** **Relator Should Be Compelled to Continue His Deposition**

Despite this Court's Order compelling Relator to testify regarding the receipt, use, and disclosure of the Privileged Documents, Relator repeatedly (64 times) refused to answer questions directly relevant to those topics. *See* Jones Decl. ¶¶ 29, 33, Exs. R, U. For example, Relator attempted to artificially cabin the scope of the deposition to encompass only questions that directly referred to one of the Privileged Documents. *See, e.g.*, Ferris Tr. at 122:24-123:1. But because Relator's own testimony establishes that he commingled the Privileged Documents with the other confidential documents that he misappropriated, *see id.* at 129:14-130:8, his access and use of the misappropriated confidential documents speaks to his access and use of the Privileged Documents as well. Other questions Relator refused to answer directly sought to probe matters raised in his answers to Defendants' Second Set of Interrogatories; for example, questions about whether he knowingly violated his contractual obligations to Defendants by retaining their privileged and other confidential materials after he resigned speak *directly* to his interrogatory responses that he stored documents, including the Privileged Documents, on his hard drive "[d]uring the course of his duties." Jones Decl. ¶ 20, Ex. M at 3. Likewise, questions about communications with Relator's counsel are directly relevant to Relator's claims about his attorneys' receipt, use, and disclosure of the Privileged Documents. *See* Dkt. 85 at 4, 17; Dkt. 85-1 at 17-18; Dkt. 165 at 3, 5.

By refusing to testify about these and other relevant topics, Relator violated the Court's Order compelling his testimony regarding the receipt, use, and disclosure of the

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)

Privileged Documents, Dkt. 199 at 14, and Relator should be compelled to testify further and to answer all questions related to those matters. Additionally, because Defendants learned of the gravest misconduct, the destruction of his home computer, only *after* his deposition, Relator should be ordered to testify regarding his spoliation of evidence as well.

2. **The Hard Drive, Device Installation Logs, and Personal Email Address Are Relevant and Proportional to the Needs of the Case**

After the deposition, Defendants served Requests for Production specifically seeking documents and other evidence related to Relator's receipt, use, and disclosure of the Privileged Documents. *See* Jones Decl. ¶ 32, Ex. T. This included (1) the devices Relator used to access the Privileged Documents or logs from those devices; (2) the communications he made disclosing or otherwise discussing information in the Privileged Documents; and (3) documents identifying the email account(s) he used to make those communications. *See id.*

Relator's response represents that the only responsive evidence that remains after his spoliation is his encrypted external hard drive, documents relating to his private email address, his email communications with counsel, and *possibly* logs from Price Armstrong computers showing how often those computers accessed the flash drive containing the Privileged Documents and other confidential documents (Relator refuses to tell Defendants whether these logs are available or have also been destroyed). *See id.* ¶¶ 34, 36, Exs. V, X. Yet Relator refuses to produce even this limited information, despite its manifest relevance to Defendants' investigation of his access to and use of their privileged communications. When Defendants asked to meet and confer about Relator's refusal, and requested that Relator at least provide a privilege log to assess his claim of privilege, Relator did not respond for weeks and then refused to produce any evidence when the parties eventually did meet and confer. *See id.* ¶¶ 35-36, 38-40, Exs. W-X; *see also* n. 5, *supra*.

Relator objects that this discovery is not relevant. *See id.* ¶ 34, Ex. V; *see also* Dkt. 85 at 3, n.3. This argument never had merit: these types of documents are directly relevant to

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-36-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 43 of 49

Relator's misconduct. *See, e.g.*, *Xyngular*, 2016 WL 4126462, at *1 (the parties "engag[ed] in lengthy discovery" on sanctionable conduct, including misappropriation of confidential documents). In any event, this argument cannot possibly stand in the face of the Court's Order compelling discovery on precisely these issues. *See* Dkt. 199; Jones Decl. ¶ 35, Ex. W at 2.

The encrypted hard drive where Relator stashed the Privileged Documents and other confidential documents is certainly relevant. Even though analysis of this drive cannot substitute for an examination of the home computer he threw in the garbage, and even though Relator stated that he deleted the documents he took from Defendants and stored on the drive, forensic analysis may be able to obtain relevant information about what documents he stored on the drive, how he organized those documents (which would also show which documents he sent to his counsel to substantiate his claims, *see* Ferris Tr. at 124:19-126:5), when he stored and deleted those documents, and possibly whether or when he modified and re-saved any of the documents. *See* Massoud Decl. ¶¶ 10-12, 15-16. If the drive is still encrypted, additional precautions must be taken to ensure a forensic analysis will be effective: any password, passphrase, or other security mechanism Relator possesses that was used to encrypt the drive must be provided, and Relator must not attempt to decrypt the drive himself before producing it. *See id.* ¶ 17.

Relator's personal email address and Price Armstrong device installation logs likewise constitute relevant evidence. Relator testified that he has a single email account and that he used that email account to send the documents he misappropriated from Defendants to his counsel to substantiate his claims (then refused to answer a question asking for the associated email address). *See* Ferris Tr. at 176:4-177:1. But the account Relator used to send documents to his counsel is important to investigating when and how often he transmitted the Privileged Documents to his counsel. And although Relator testified that he did not send any of the Privileged Documents to his counsel prior to March 2015, Defendants can hardly be

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-37-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 44 of 49

expected to take his word on this issue, given his repeated misrepresentations and general inability to recall specific information during his deposition. Any device installation log remaining on Price Armstrong computers similarly is necessary to evaluate the extent to which Price Armstrong accessed and transferred the Privileged Documents.

Finally, Relator's proportionality objection is meritless: it is hardly burdensome to ask him to get the external hard drive from his garage, *see* Ferris Tr. at 44:1-2, and produce it to Defendants; the device installation log is a single file sitting on a computer's hard drive, *see* Massoud Decl. ¶ 6; and it is not credible that documents sufficient to show Relator's personal email address would be anything other than trivial to obtain and produce. On the other hand, the remaining responsive discovery comprises the crux of Defendants' ability to further develop the already extensive factual record of Relator's misconduct. The balance of these interests thus warrants compelling Relator to produce all remaining evidence responsive to the Requests, including: (1) the encrypted external hard drive in its current state, together with any information required to decrypt it as part of a forensic analysis; (2) documents sufficient to identify Relator's personal email account; and (3) any remaining device installation logs from Price Armstrong computers. Relator's history of spoliating evidence warrants an order requiring him not to attempt to decrypt or otherwise modify the current state of the encrypted hard drive.

### 3. Relator Waived Any Privilege Over His Communications with Counsel About Defendants' Privileged and Confidential Documents

Relator likewise should be compelled to produce communications with or between his attorneys regarding the receipt, use, or disclosure of the Privileged Documents and other confidential documents. As Relator wrote, "The attorney-client privilege is intended to be a shield, not a sword" and "[t]he Ninth Circuit has established when a party . . . asserts a claim that in fairness requires an examination of otherwise protected communications it waives the privilege." Dkt. 150 (Relator's Suppl. Mot. to Compel Product. of Docs. and Mem. in Supp.) at 4. Here, Relator has made repeated representations to Defendants and the Court—many of

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-38-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 45 of 49

which have turned out to be false—about when and how he disclosed the Privileged Documents to his attorneys and when and how his attorneys accessed and used them. *See generally* Dkts. 85, 85-1, 165; *see also supra* sections II.D.1, III.A.1.c. Defendants "cannot adequately dispute" these representations without access to the email communications between Relator and his counsel that Relator claims are privileged. *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003). Accordingly, Relator has "abuse[d] the privilege" and "implicitly waived" it. *Id.*

Defendants therefore ask the Court to compel Relator to produce the communications with or between his attorneys regarding the documents Relator took from Defendants (including the Privileged Documents) or, at minimum, a privilege log that includes date, author, recipient(s), subject matter, privilege claimed, basis for privilege claimed, and other information relevant to assessing the claim of privilege, encompassing all such communications.[9]

**\*\*\*\***

Defendants therefore request that, if this Court does not dismiss this action at this time, the Court (1) overrule Relator's objections to Defendants' deposition questions and Requests; (2) compel Relator to continue his deposition and to actually answer the questions this time; and (3) compel Relator to produce all remaining evidence responsive to the Requests. Responsive evidence includes: the encrypted hard drive and any password, passphrase, or other key required to decrypt it; any device installation logs that still exist from Price Armstrong computers showing how often those computers accessed the flash drive containing the Privileged Documents and Defendants' other confidential documents; documents sufficient to identify his personal email account; and all emails and other

---

[9] Indeed, Relator's prolonged failure to produce such a log is another reason to find that he has waived attorney-client privilege over responsive email communications. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005).

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)

communications with or between his attorneys regarding the Privileged Documents and Defendants' other confidential documents, or at least a privilege log. Additionally, Defendants request an award of reasonable expenses incurred in bringing this motion and as a result of Relator's abusive litigation practices, including Relator's continued deposition and a forensic inspection of Relator's encrypted hard drive and any device installation logs that still exist. *See, e.g.*, *Cedar Rapids Lodge & Suites, LLC v. JFS Devel., Inc.*, No. C09-0175, 2011 WL 13073692, at *2 (D. Iowa Feb. 1, 2011) (compelling Defendants to produce computer hardware and pay for a forensic inspection); *Gardner v. Toyota Motor Corp.*, No. C08-0632RAJ, 2010 WL 3733876, at *3-4 (W.D. Wash. Sept. 1, 2010) (awarding attorney's fees for continued deposition).

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss the case with prejudice as to Relator, or in the alternative, compel further discovery as requested by Defendants. Under Federal Rule of Civil Procedure 37(a)(5), (b)(5), and the Court's inherent authority, Defendants also request an award of reasonable expenses incurred in bringing this motion and as a result of Relator's abusive litigation practices.

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-40-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 47 of 49

Dated: February 17, 2017.

PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

By: */s/ David F. Taylor*
 David F. Taylor (*Pro Hac Vice*)
 Angela R. Jones (*Pro Hac Vice*)
 Kathleen M. O'Sullivan (*Pro Hac Vice*)

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
Telephone: 907.279.8561
Facsimile: 907.276.3108

By: */s/ James N. Leik*
 James N. Leik, Alaska Bar No. 8111109

*Attorneys for Defendants*
*Afognak Native Corporation and*
*Alutiiq, LLC*

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-41-
Case 3:15-cv-00150-HRH Document 234 Filed 03/01/17 Page 48 of 49

## CERTIFICATE OF SERVICE

I certify that on March 1, 2017, the foregoing was filed with the Court's electronic filing system which served a copy on all counsel of record.

s/David F. Taylor
David F. Taylor

United States ex rel. Ben Ferris v. Afognak
Native Corp, et al. (3:15-cv-00150-HRH)
-42-
Case 3:15-cv-00150-HRH   Document 234   Filed 03/01/17   Page 49 of 49