IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,　　　　)
ex rel. BEN FERRIS,　　　　　　　　)
　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　Plaintiff,　　　)
　　　　　　　　　　　　　　　　　 )
　　vs.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　 )
AFOGNAK NATIVE CORPORATION　　　 )
and ALUTIIQ, LLC,　　　　　　　　　)
　　　　　　　　　　　　　　　　　 )　No. 3:15-cv-0150-HRH
　　　　　　　　　　Defendants.　　 )
_____)

O R D E R

Application for Attorney's Fees and Costs

As a sanction for relator's abusive litigation tactics, the court permitted defendants to file an "application for an award of attorney's fees against relator."[1] Defendants were permitted to include in the application, "all attorney charges and costs which defendants' billing statements have identified as occasioned by relator's possession and retention of the nine privileged documents."[2] Defendants have timely filed their application.[3] The court

---

[1]Order re Motion to Dismiss for Abusive Litigation Tactics, or in the Alternative, to Compel Additional Discovery at 26, Docket No. 255.

[2]Id. at 26-27.

[3]Docket No. 267.

-1-

permitted relator to file a response,[4] which relator timely filed.[5] Oral argument was not requested and is not deemed necessary.

## Background

Defendants seek $379,705 in fees and costs associated with relator's possession and retention of the nine privileged documents. The fees are divided into six time categories: 1) $22,686 for the initial investigation and informal discussions held in June 2015 after defendants became aware that relator possessed the privilege documents, 2) $16,662 for the interrogatories defendants propounded on relator once they became aware that he possessed the privilege documents, 3) $130,301 for the motion to compel filed in Alabama and then renewed in this court in which defendants sought to compel more complete answers to the interrogatories, 4) $35,055 in fees for relator's deposition about the privileged documents, 5) $10,737 in fees for requests for production related to the privileged document dispute, and 6) $162,632 in fees for the motion to dismiss for abusive litigation tactics, or in the alternative to compel relator to more fully respond to the requests for production. Defendants also seek $1,632 in expert fees.

## Discussion

Defendants were awarded attorney's fees and costs as a sanction pursuant to the court's inherent powers. The amount of fees and costs awarded as a sanction must be

---

[4]Docket No. 288.

[5]Docket No. 290.

reasonable.  Leon v. IDX Systems Corp., 464 F.3d 951, 961 (9th Cir. 2006).  "Recovery should never exceed those expenses and fees that were reasonably necessary to resist the offending action."  Matter of Yagman, 796 F.2d 1165, 1185 (9th Cir. 1986).  "The [c]ourt must make some evaluation of the fee breakdown submitted by counsel to determine not the actual fees and expenses incurred, but what amount of fees and expenses are reasonable." Mora v. Target Corp., Case Nos. 07cv719 MMA (WMc), 08cv513 MMA (WMc), 08cv1787 MMA (WMc), 2010 WL 4818540, at *1 (S.D. Cal. Nov. 22, 2010).  "[C]ourts generally apply the lodestar method to determine what constitutes a reasonable attorney fee[.]"[6]  Bravo

---

[6]Relator cites to two unpublished decisions from Western District of Washington that held that

> [i]f the sanctions are monetary, the following factors will be consulted to determine the appropriate amount of the sanction: (1) the nature and quality of the conduct at issue; (2) who is responsible for the culpable conduct as between attorney and client; (3) whether there was a pattern of wrongdoing requiring a stiffer sanction; (4) the sanctioned party's ability to pay; (5) whether the opposing party was hindered or prejudiced by the wrongdoer's conduct; and (6) any other mitigating or aggravating factors.

Dennings v. Clearwire Corp., Case No. C10–1859JLR, 2013 WL 3892818, at *2 (W.D. Wash. July 30, 2013); Warshawer v. Tarnutzer, Case No. C14-1042 RSM, 2016 WL 1531915, at *3 (W.D. Wash. April 15, 2016).  In both cases, the court cited to Republic of Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 74 (3d Cir. 1994), in which the Third Circuit discussed these factors when determining whether to impose sanctions.  The Third Circuit did not indicate that these were factors to be considered when determining the amount of sanctions, which is the question before the court. With the exception of relator's ability to pay, the court has already considered the above factors when it determined that monetary sanctions were appropriate for relator's possession and retention of the nine privileged documents.

-3-

v. City of Santa Maria, 810 F.3d 659, 665–66 (9th Cir. 2016). "Under the lodestar method, the court multiplies a reasonable number of hours by a reasonable hourly rate." Stanger v. China Electric Motor, Inc., 812 F.3d 734, 738 (9th Cir. 2016) (citation omitted).

<u>reasonable hourly rates</u>

Defendants are represented in this matter by Perkins Coie which "is a national law firm with approximately 1,000 lawyers across 16 U.S. offices."[7] Defendants seek fees for five time keepers: 1) David Taylor, 2) Angela Jones, 3) Erin Earl, 4) Cara Wallace, and 5) Lynn McClard. Taylor is a partner with 30 years experience whose average rate was $688 per hour.[8] Jones is a partner with 11 years of experience whose average rate was $517.[9] Earl is an associate with 5 years of experience whose average rate was $400.[10] Wallace is an associate with 2 years of experience whose average rate was $308.[11] McClard is a paralegal with 20 years of experience whose average rate was $208.[12] All of these time keepers are located in Perkins Coie's Seattle, Washington office.

---

[7] Declaration of David F. Taylor [etc.] at 4, ¶ 9, Docket No. 268.

[8] Id. at 5, ¶ 11.

[9] Id.

[10] Id.

[11] Id.

[12] Id.

"Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." Camacho v. Bridgeport Financial, Inc., 523 F.3d 973, 979 (9th Cir. 2008). This case was originally filed in Alabama and then transferred to Alaska. However, "'rates outside the forum may be used if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" Id. (quoting Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997)). Taylor avers that "defending companies against False Claims Act claims brought by qui tam relators is a specialized and complex practice, and the attorneys who regularly handle such cases often litigate around the country."[13] Defendants' general counsel avers that because this case was originally filed in Alabama, she "searched for counsel with national experience in successfully defending high-stakes cases filed under the False Claims Act" and that is why defendants "retained David F. Taylor of Perkins Coie as lead counsel."[14] She further avers that she is "not aware of any attorneys in Anchorage with comparable experience in defending complex False Claims Act matters" who could have defended "this case had it been filed in Alaska in the first instance."[15] James Leik, an attorney in Perkins Coie's Anchorage office avers that "[n]one of the attorneys in Perkins Coie's Anchorage office has in-depth experience litigating qui tam

---

[13]Id. at 6, ¶ 14.

[14]Declaration of Amy Shimek [etc.] at 2, ¶ 3, Docket No. 270.

[15]Id. at 2, ¶ 4.

-5-

actions under the False Claims Act" and that he "believe[s] that it would be difficult to retain Anchorage counsel with significant experience defending against such claims.[16] This belief is consistent with the court's experience. Defendants have established that it was necessary in this instance to use lawyers from outside the local forums.

As for whether the rates charged by defense counsel are in line with what other Seattle lawyers charge, Taylor avers that "[b]ased on my experience," these rates "are reasonable in light of the quality of the work performed, as well as the experience required for this matter, the complexity of the claims, and the hundreds of millions of dollars sought by [r]elator in damages...."[17] Taylor also avers that the rates charged to defendants "are consistent with the rates charged by Perkins Coie personnel in similar cases."[18] Defendants offer no evidence of what the Seattle prevailing rates are for attorneys and paralegals with experience similar to those involved in this case. Defendants do cite to a New York qui tam case in which the court found rates of $836 for a senior partner and $631.75 and $541.50 for associates to be reasonable. United States ex rel. Fox Rx, Inc. v. Omnicare, Inc., Case No. 12CV275 (DLC) 2015 WL 1726474, at *2-3 (S.D.N.Y. April 15, 2015). But it should be noted that the party requesting fees offered evidence that these rates were below the market rate for New York

---

[16]Declaration of James N. Leik [etc.] at 2, ¶ 5, Docket No. 268.

[17]Taylor Declaration at 6, ¶ 15, Docket No. 269.

[18]Id.

City attorneys with similar experience. Id. at 2-3. Defendants have offered no such evidence here.

That said, relator offers no objection to the average rates charged by defense counsel and the court may rely on its own knowledge and experience with the legal market in determining whether the rates charged by defense counsel are in line with the prevailing market rate for Seattle. Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011). Because it is not unusual for Seattle lawyers to appear in this court, the court has sufficient knowledge and experience with that legal market to conclude that the rates charged by defense counsel are reasonable.

reasonable number of hours

Defendants seek compensation for 760 hours, which they insist was a reasonable amount of time to spend on the privileged documents issue. Defendants argue that the importance of the interests at stake support the reasonableness of the hours claimed because the attorney-client privilege is "'perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system.'" In re Grand Jury Proceedings Grand Jury No. 97-11-8, 162 F.3d 554, 556 (9th Cir. 1998) (quoting United States v. Bauer, 132 F.3d 504, 510 (9th Cir. 1997)). Defendants also argue that the number of hours spent on the privileged documents issue was reasonable because relator is seeking significant damages and civil penalties. Defendants also argue that the number of hours expended was reasonable because they worked for over two years to investigate and

obtain relief for relator's misconduct. Defendants also argue that the privileged documents issue was legally and factually complex, thereby making the number of hours expended reasonable. Defendants further argue that relator's own intransigence and obstruction accounts for much of the time defense counsel had to spend on this dispute. Defendants emphasize that relator and his counsel made numerous misrepresentations about the receipt, use, disclosure and destruction of the privileged documents, misrepresentations that defendants contend complicated and prolonged the resolution of the privileged documents dispute. Defendants argue that the fact that they have paid all of the hours billed by defense counsel strongly supports the reasonableness of the number of hours expended because they would not have paid for this legal work done unless they believed it was necessary. Finally, defendants contend that they are not seeking fees for all of the work associated with relator's possession and retention of the nine privileged documents,[19] thereby making the fees they are seeking reasonable.

While these general arguments by defendants suggest that it was reasonable for defense counsel to spend a fair amount of time on the privileged documents issue, at first blush, spending a total of 760 hours on this issue seems unreasonable. Thus, a more detailed look at the time spent by defense counsel is called for in this instance.

First, defense counsel billed 45.1 hours on the initial investigation and informal discussions held in June 2015 after defendants became aware that relator possessed the

---

[19]See Taylor Declaration at 3, ¶ 6, Docket No. 268.

privileged documents. This represents more than a 40-hour week, which was an excessive amount of time to spend on the initial investigation. A reasonable amount of time to have spent on the initial investigation was 25 hours.

Second, defense counsel billed 30.6 hours in connection with the interrogatories defendants propounded on relator once they became aware that he possessed the privilege documents. This was an unreasonable amount of time to spend on this task. Most of the work on this task was done by Jones and Taylor. It should not have taken two experienced partners this long to draft and deal with five interrogatories. A reasonable amount of time to have spent on this task was 15 hours.

Third, defense counsel billed 130 hours on the motion to compel filed in Alabama and then another 119.9 hours for the renewed motion to compel filed in Alaska (a total of 249.9 hours). Contrary to relator's argument, defendants were not solely responsible for this case being transferred to Alaska. It is reasonable for defendants to recover fees incurred for both motions. But, it was not reasonable for defense counsel to expend 130 hours on the motion filed in Alabama and then another 119.9 hours for the renewed motion to compel filed in Alaska. The motion involved nine privileged documents and contrary to defendants' contention, it did not involve complex legal or factual issues. Spending 130 hours on this motion to begin with was unreasonable and spending almost another 120 hours to rebrief it under Ninth Circuit law was extremely unreasonable. A reasonable amount of time to have spent on these two motions combined was 125 hours.

Fourth, defense counsel billed 96.7 hours for work in connection with relator's deposition about the privileged documents. This was an unreasonable amount of time to spend on this task. This was a limited scope deposition and as evidenced by the questions asked at the deposition, it appears that defense counsel spent quite a bit of time preparing for questions that exceeded the scope of the deposition. 40 hours was a reasonable amount of time to spend preparing for and taking relator's limited deposition.

Fifth, defense counsel billed 27.1 hours in connection with defendants' second set of requests for production. This was a reasonable amount of time to spend on drafting and dealing with 14 requests for production.

Sixth, defense counsel billed 310.6 hours for defendants' motion to dismiss for abusive litigation tactics, or in the alternative, to compel additional discovery. This was an unreasonable amount of time to spend on this motion. Although it involved a serious matter, spending the equivalent of 38 8-hour days on this matter was excessive. A reasonable amount of time to have spent on this motion was 150 hours.

Finally, defendants seek $1,632 in expert fees. Relator argues that it would be unreasonable to allow defendants to recover these fees since the expert's report was offered in support of defendants' alternative motion to compel, a motion that was denied. But the court permitted defendants to include in their application for fees and costs "all attorney charges and costs which defendants' billing statements have identified as occasioned by

relator's possession and retention of the nine privileged documents."[20] The expert fees fall within that parameter, and the amount sought is reasonable.

<u>the lodestar calculation</u>

For defendants' initial response to the privileged documents dispute, the reasonable number of hours is 25. Because Jones did most of this initial work, her average rate of $517 will be used for these hours. This amounts to $12,925 in fees for the initial work.

For the interrogatories associated with the privileged documents issue, the reasonable number of hours is 15. Because Jones did most of the work on the interrogatories, her average rate of $517 will be used for these hours. This amounts to $7,755 in fees for the interrogatories.

For defendants' motions to compel, the reasonable number of hours for these two motions is 125. Because Jones did the majority of the work on both motions, her average rate of $517 will be used for these hours. This amounts to $64,625 in fees for these two motions.

For relator's deposition, the reasonable number of hours is 40. Because Wallace did the most work on this task, her average rate of $308 will be used for these hours. This amounts to $12,320 in fees for relator's deposition.

---

[20]Order re Motion to Dismiss for Abusive Litigation Tactics, or in the Alternative, to Compel Additional Discover at 26-27, Docket No. 255.

For the requests for productions, the reasonable number of hours is 27.1. Because no reductions are being made to this category, the rate of each time keeper who worked on this task will be used. This amounts to $10,737 in fees for the requests for production.

For the motion to dismiss for abusive litigation tactics, the reasonable number of hours is 150. Because Earl did most of the work on this motion, her average rate of $400 will be used. This amounts to $60,000 in fees.

$1,632 in expert fees will also be included in the lodestar amount.

Based on the above, the lodestar amount is $169,994.

<u>Kerr and other factors</u>

After the lodestar is calculated, "the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the <u>Kerr</u> factors that are not already subsumed in the initial lodestar calculation." <u>Morales v. City of San Rafael</u>, 96 F.3d 359, 363–64 (9th Cir. 1996). The <u>Kerr</u> factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

<u>Id.</u> at n.8. "Additionally, the [c]ourt should consider the sanctioned party's ability to pay to determine the award's reasonableness." <u>Mora</u>, 2010 WL 4818540, at *1.

-12-

Kerr factors 1, 2, 3, 8, and 9 are subsumed in the lodestar calculation. Consideration of the remaining Kerr factors does not suggest an upward or downward adjustment to the lodestar amount.

As for his ability to pay, relator contends that he does not have the ability to pay the over $300,000 that defendants sought and relator has submitted a sealed declaration to support his contention.[21] Although defendants contend that this declaration is conclusory because relator has failed to provide any documentation to support his averments, the court is persuaded that relator will have some difficulty paying the amount of sanctions being imposed. The court is not persuaded, however, that a further reduction to that amount would be appropriate. Relator must pay the reasonable price for his misconduct. But in recognition of relator's financial situation, the court will give relator six months in which to pay the $169,994 sanction, rather than requiring relator to pay this amount "forthwith."[22]

## Conclusion

Defendants are awarded $169,994 in attorney's fees and costs as a sanction for relator's abusive litigation tactics. Relator shall pay this amount on or before April 18, 2018.

DATED at Anchorage, Alaska, this 18th day of October, 2017.

/s/ H. Russel Holland
United States District Judge

---

[21]SEALED Declaration of Ben Ferris [etc.], Docket No. 282-1.

[22]Order re Motion to Dismiss for Abusive Litigation Tactics, or in the Alternative, to Compel Additional Discovery at 27, Docket No. 255.