WO        IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,                )
ex rel. BEN FERRIS,                      )
                                         )
                      Plaintiff,         )
                                         )
      vs.                                )
                                         )
AFOGNAK NATIVE CORPORATION               )
and ALUTIIQ, LLC,                        )
                                         )   No. 3:15-cv-0150-HRH
                      Defendants.        )
_____)

O R D E R

Motion for a Protective Order

Relator moves[1] for a protective order quashing defendants' first set of requests for admissions. This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

Background

On April 11, 2008, defendants served relator with their first set of requests for admissions, which consisted of 537 requests.[3] The RFAs consist of two parts. The first part consists of twenty-two RFAs which seek to identify the scope of relator's claims generally.

---

[1] Docket No. 390.

[2] Docket No. 411.

[3] Exhibit A, Declaration of Michael J. Pendell [etc.], Docket No. 391.

-1-

The second part consists of seventeen sections, with each section being devoted to a particular 8(a) subsidiary (the sixteen 8(a) subsidiaries relator alleges are shams and the one 8(a) subsidiary that relator allegedly has admitted was not a sham). Each of the seventeen sections contains approximately 30 RFAs. The RFAs in each section are largely identical. Defendant Alutiiq LLC also served relator with its third set of interrogatories, which includes Interrogatory No. 20.[4] Interrogatory No. 20 asks: "If your response to any of Defendants' First Set of Requests for Admissions is anything other than an unconditional admission, state the reason for denying the request and identify all facts, witnesses, and documents that support that response."[5]

Relator now moves for a protective order quashing the requests for admission and Interrogatory No. 20.

## Discussion

"Courts have the power to issue protective orders in the discovery process in order 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" Byard v. City and County of San Francisco, 16-cv-00691-WHA (DMR), 2017 WL 988497, at *1 (N.D. Cal. March 15, 2017) (quoting Fed. R. Civ. P. 26(c)(1)). "Generally, a party seeking a protective order has a 'heavy burden' to show why discovery should be denied. . . ." Sequoia Property v. United States, 203 F.R.D. 447, 451 (E.D. Cal. 2001) (quoting Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).

---

[4]Exhibit B, Pendell Declaration, Docket No. 391.

[5]Id. at 6.

Rule 36, Federal Rules of Civil Procedure provides:

> A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:
>
> (A) facts, the application of law to fact, or opinions about either; and
>
> (B) the genuineness of any described documents.

"Admissions are sought, first, to facilitate proof with respect to issues that cannot be eliminated from the case and, second, to narrow the issues by eliminating those that can be." Conlon v. United States, 474 F.3d 616, 622 (9th Cir. 2007). "The rule is not to be used in an effort to 'harass the other side' or in the hope that a party's adversary will simply concede essential elements." Id. (quoting Perez v. Miami–Dade County, 297 F.3d 1255, 1268 (11th Cir. 2002)). "Rather, the rule seeks to serve two important goals: truth-seeking in litigation and efficiency in dispensing justice." Id. "[R]equests for admission should not be used to establish facts which are obviously in dispute, to demand that the other party admit the truth of a legal conclusion, even if the conclusion is attached to operative facts, or to ask the party to admit facts of which he or she has no special knowledge." Tuvalu v. Woodford, Case No. CIV S-04-1724 DFL KJM P, 2006 WL 3201096, at *7 (E.D. Cal. Nov. 2, 2006) (internal citations omitted).

First, relator argues that the sheer number of RFAs that defendants have propounded is oppressive and unduly burdensome. However, "courts do not readily grant protective orders against an entire set of discovery requests on the grounds that the number of requests

is excessive." Jones v. Skolnik, Case No. 3:10–cv–00162–LRH, 2014 WL 2625000, at *2 (D. Nev. June 12, 2014). "Like all discovery, Requests for Admissions . . . are bound by the scope of Rule 26 requiring discovery to be relevant and proportional to the needs of the case." Blanton v. Torrey Pines Property Mgmt., Inc., Case No. 15-CV-0892 W (NLS), 2017 WL 2291752, at *3 (S.D. Cal. May 24, 2017). The factors the court considers in determining whether a discovery request is proportional are 1) "the importance of the issues at stake in the action," 2) "the amount in controversy," 3) "the parties' relative access to relevant information," 4) "the parties' resources," 5) "the importance of the discovery in resolving the issues," and 6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

This case involves fraud on the government, which is an important issue, and relator contends there are billions of dollars at stake. Only relator has access to the information that defendants seek because only he knows whether he plans to dispute certain facts. Relator has the resources to respond to the RFAs given that he has a number of lawyers representing him. And, the expense or burden of responding to these RFAs will not outweigh the likely benefit because relator's responses will help the parties determine what facts are actually in dispute. While "[r]equests to admit should not be excessive in number and, obviously, should be tailored in a manner and scope to avoid harassment and improper motive[,]" Tamas v. Family Video Movie Club, Inc., 301 F.R.D. 346, 347 (N.D. Ill. 2014), the number of RFAs that defendants have propounded is not excessive, given the nature of this case. Relator has put sixteen of defendants' 8(a) subsidiaries at issue and has alleged a fraudulent scheme

involving those sixteen entities that spans several years and that has allegedly resulted in the government being defrauded of billions of dollars. If this were a case involving two or three simple, straightforward claims, 537 RFAs would be excessive. But, it is not; it is a fact-intensive, complex case. The number of RFAs that defendants have propounded is not out of proportion to the needs of this case.

Relator next argues that some of the RFAs are improper because they ask for legal conclusions. Specifically, relator points to the RFAs that ask him to admit or deny that each subsidiary was a "business concern" within the meaning of 13 C.F.R. § 121.105 and to admit or deny that each subsidiary was a "separate and distinct legal entity" within the meaning of 13 C.F.R. § 124.109(c)(1).

Defendants argue that these RFAs are not asking for legal conclusions, but rather are asking that relator apply the law to the facts of this case, which is a proper use of RFAs. For example, in Adobe Systems Inc. v. Christenson, Case No. 2:10–cv–00422-–LRH–GWF, 2011 WL 540278, at *7 (D. Nev. Feb. 7, 2011), which was a copyright and trademark infringement action, in several RFAs, the defendants were asked to admit whether "their advertisement, offer for sale, sale or distribution of the DISPUTED PRODUCT infringed Plaintiff's exclusive rights in the COPYRIGHTS." One of the objections the defendants raised to these RFAs was that "they call[ed] for legal conclusions. . . ." Id. The court overruled this objection because "Rule 36(a)(1)(A) states that a request may call upon a party to admit facts, the application of law to facts, or opinions about either." Id. Although the court did not expressly so state, the court appeared to be implying that these RFAs asked the

defendants to apply the law to the facts of the case. Similarly here, defendants argue that this is what they are asking relator to do, to apply the law to the facts of this case. Moreover, defendants point out that "RFAs on the ultimate issue in [a] case: e.g., whether a party was negligent; whether an accident is covered under an insurance policy" are permissible. See Fed. Prac. Guide Fed. Civ. Proc. Before Trial § 11:2007. Yet, these RFAs, according to defendants, are not even asking relator to admit any essential element of a FCA claim, the elements of which are "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." United States ex rel. Campie v. Gilead Sciences, Inc., 862 F.3d 890, 902 (9th Cir. 2017). Defendants insist that based on the discovery that has been produced to date, they have a reasonable expectation that relator could admit in good faith that the seventeen entities are business concerns under 13 C.F.R. § 121.105 and "separate and distinct legal entities" under 13 C.F.R. § 124.109(c)(1).

As one court has observed, the line between a RFA that asks for a pure legal conclusion and one that asks for the application of law to the facts of the case "is not always easy to draw." Apple Inc. v. Samsung Electronics Co., Case No. C 11–cv–1846 LHK (PSG), 2012 WL 952254, at *3 (N.D. Cal. March 20, 2012). But, these RFAs have crossed over the line of asking relator to apply the law to the facts of the case to being RFAs that ask relator to "admit the truth of a legal conclusion that would translate into deemed concessions of [relator's] entire case[,]" which are improper. Id. (citation omitted). RFA Nos. 30-31, 61-62,

92-93, 122-123, 151-152, 180-181, 210-211, 241-242, 272-273, 303-304, 334-335, 364-365, 394-395, 425-426, 455-456, 484-485, 514-515 are quashed.

Defendants have also asked relator to admit or deny whether each entity was "small" under the 8(a) Business Development regulations when it was admitted to the 8(a) BD program, whether it was "small" when it submitted initial offers for 8(a) and non-8(a) contracts, and whether the SBA determined that the entity was "small" at the time each contract was awarded. These RFAs do not ask relator to admit specific evidentiary facts. Rather, they ask relator to admit legal conclusions that would translate into deemed concessions of his entire case. Defendants are asking relator to admit "the truth of a legal conclusion, even if the conclusion is attached to operative facts[,]" which is improper. Bezi v. Camacho, Case No. SACV 11-00677-JLS (DTB), 2016 WL 4870469, at *5 (C.D. Cal. Aug. 8, 2016) (citation omitted). RFA Nos. 32-35, 63-66, 94-97, 124-127, 153-156, 182-185, 212-215, 243-246, 274-277, 305-308, 336-339, 366-369, 396-399, 427-430, 457-460, 486-489, 516-519 are quashed.

Next, relator argues that many of the RFAs ask him to admit or deny factual issues of which he has no special knowledge. Specifically, relator points out that defendants have asked him to admit or deny whether each subsidiary maintained insurance, kept and maintained financial statements, owned assets, had financial liabilities, had accounts receivable, paid taxes, had a place of business located in the United States, and operated primarily within the United States or made a significant contribution to the U.S. economy through the payment of taxes or use of American products, materials, and labor.

A party can "assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that he has made reasonable inquiry and that the information [he] knows or can readily obtain is insufficient to enable [him] to admit or deny." In re Owen, Case No. 2:11–CV–00196–JAM–GGH, 2012 WL 4845575, at *4 (E.D. Cal. Oct. 10, 2012). Defense counsel avers that defendants have produced discovery showing that the sixteen entities maintained insurance, kept and maintained financial statements, owned assets, had financial liabilities, had accounts receivable and paid taxes.[6] Relator however complains that "[d]efendants have produced over 98,000 documents (totaling over 815,000 pages)" since discovery began in this case in 2015[7] and argues that it is not reasonable for defendants to expect him to make binding admissions based on his review of this many documents which have been produced over a span of more than three years.

That there is a lot of discovery that relator will have to review to respond to some of the requests for admissions is, to a large degree, of relator's own making since he determined the scope of his claims, not defendants. Relator has sufficient information to respond to the RFAs set out above, with one exception. The RFAs that ask relator to admit or deny whether an entity operated primarily within the United States or made a significant contribution to the U.S. economy through the payment of taxes or use of American products, materials, and labor are not proper RFAs because whether the 8(a) subsidiaries "operated" at all is a disputed fact. RFA Nos. 28, 59, 90, 120, 149, 178, 208, 239, 270, 301, 332, 362, 392, 423,

---

[6]See Declaration of Angela R. Jones [etc.] at 3-4, ¶ 9, Docket No. 412.
[7]Id. at 2, ¶ 5.

453, 482, 512 are quashed. For the same reason, the following RFAs that ask relator to admit or deny whether Afognak Native Corporation was committed to financially supporting the "operations" of the 8(a) entities are quashed: RFA Nos. 52, 83, 114, 143, 172, 201, 232, 263, 294, 325, 356, 385, 416, 447, 476, 505, 536. The following RFAs however are <u>not</u> quashed: RFA Nos. 27, 43-48, 58, 74-79, 89, 105-110, 119, 134-139, 148, 163-168, 177, 192-197, 207, 223-228, 238, 254-259, 269, 285-290, 300, 316-321, 331, 347-352, 361, 376-381, 391, 407-412, 422, 438-443, 452, 467-472, 481, 496-501, 511, 527-532.

Other RFAs also ask relator to admit or deny facts that are obviously in dispute. Defendants ask relator to admit or deny whether each entity met the self-performance requirements for each 8(a) and non-8(a) contract awarded. If the 8(a) entities were not separate and distinct entities, as relator contends, then the issue of whether they met the self-performance requirements is also in dispute. The same is true of the RFAs that ask relator to admit or deny whether the entities had employees, "grew" and "developed" after being admitted to the 8(a) program, and possessed reasonable prospects for success. In addition, defendants ask relator to admit or deny whether each entity operated in accordance with its operating agreement while it was in the 8(a) program. Whether each entity had an operating agreement may not be a disputed fact, but whether each entity was operating in accordance with that agreement is. Because they ask relator to admit or deny disputed facts, the following RFAs are quashed: RFA Nos. 36-39, 42, 51, 53, 67-70, 73, 82, 84, 98-101, 104, 113, 115, 128-131, 133, 142, 144, 157-160, 162, 171, 173, 186-189, 191, 200, 202, 216-219, 222, 231, 233, 247-250, 253, 262, 264, 278-281, 284, 293, 295, 309-312, 315, 324, 326, 340-

343, 346, 355, 357, 370-373, 375, 384, 386, 400-403, 406, 415, 417, 431-434, 437, 446, 448, 461-464, 466, 475, 477, 490-493, 495, 504, 506, 520-523, 526, 535, 537.

For the subsidiaries that have "graduated" from the 8(a) program, defendants ask relator both to admit the actual date on which the entity graduated and to admit that the entity actually graduated. These RFAs are duplicative and relator is only required to respond to the RFAs that ask him to admit the date on which the entity graduated (RFA Nos. 24, 55, 86, 204, 235, 266, 297, 328, 388, 419, 508). RFA Nos. 40, 71, 102, 220, 251, 282, 313, 344, 404, 435, 524 are quashed.

As for the RFAs that have not been discussed above, the court has reviewed these RFAs and determined that they are proper RFAs. The following RFAs are not quashed: RFA Nos. 1-23, 25-26, 29, 41, 49-50, 54, 56-57, 60, 72, 80-81, 85, 87-88, 91, 103, 111-112, 116-118, 121, 132, 140-141, 145-147, 150, 161, 169-170, 174-176, 179, 190, 198-199, 203, 205-206, 209, 221, 229-230, 234, 236-237, 240, 252, 260-261, 265, 267-268, 271, 283, 291-292, 296, 298-299, 302, 314, 322-323, 327, 329-330, 333, 345, 353-354, 358-360, 363, 374, 382-383, 387, 389-390, 393, 405, 413-414, 418, 420-421, 424, 436, 444-445, 449-451, 454, 465, 473-474, 478-480, 483, 494, 502-503, 507, 509-510, 513, 525, 533-534.

Next, relator argues that defendants have in essence served 537 interrogatories. This argument is based on Interrogatory No. 20 which asks: "If your response to any of Defendants' First Set of Requests for Admissions is anything other than an unconditional admission, state the reason for denying the request and identify all facts, witnesses, and

documents that support that response."[8] Courts have held that "[a]llowing service of an interrogatory which requests disclosure of all of the information on which the denials of each . . . request[] for admissions [are] based . . . essentially transforms each request for admission into an interrogatory." Safeco of Amer. v. Rawstron, 181 F.R.D. 441, 445 (C.D. Cal. 1998). "This is not the purpose requests for admissions were intended to serve, and because Rule 36 imposes no numerical limit on the number of requests for admissions that may be served, condoning such a practice would circumvent the numerical limit contained in Rule 33(a)." Id. Thus, relator argues that defendants have not served him with 537 RFAs but rather 537 interrogatories, which greatly exceeds the 25 that are provided for by Rule 33.

Contrary to defendants' contention, this argument is not premature. Because relator is being required to respond to a number of RFAs, it appropriate to determine at this time whether Interrogatory No. 20 should be construed as 537 interrogatories, rather than one. As to that issue, the court concludes that Interrogatory No. 20 should be construed as a separate interrogatory for each RFA to which relator must respond.

The question then becomes how many interrogatories do defendants have remaining. Defendants contend that only Alutiiq, LLC has propounded any interrogatories and that it has only propounded 20 so far. Thus, defendants argue that Alutiiq, LLC has 5 more interrogatories and Afognak still has all of its 25 interrogatories. Relator, however, argues that defendants should be treated as one for purposes of discovery.

---

[8]Exhibit B at 6, Pendell Declaration, Docket No. 391.

"'[T]he decision to consider multiple parties as one for the purposes of Rule 33(a) is within the discretion of the court.'" Beeman v. Anthem Prescription Mgmt., Inc., Case No. EDCV 04-407-VAP (KKx), 2017 WL 5564535, at *3 (C.D. Cal. Nov. 17, 2017) (quoting Rahman v. Smith & Wollensky Rest. Grp., Inc., No. 06-CIV-6198-LAK (JCF), 2007 WL 1521117, at *8 n.7 (S.D.N.Y. May 24, 2007)). Because defendants have jointly defended this case from the outset, defendants will be treated as one for purposes of Rule 33, which means that they have 25 interrogatories total, not 25 interrogatories each.

For now, relator need only answer Interrogatory No. 20 to the extent that doing so will not exceed Rule 33's 25-interrogatory limit. If, after relator has responded to the non-quashed RFAs, defendants believe that there would be good cause to allow additional interrogatories, the court will entertain a motion to that effect at that time.

Finally, in his opening brief, relator notes that he is "reserv[ing] the right to object to the substance of any of the Requests following the [c]ourt's ruling on this [m]otion."[9] However, "[i]f a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery." Fed. R. Civ. P. 26(c)(2). Relator shall respond to the non-quashed RFAs without further objection.

## Conclusion

Relator's motion for a protective order[10] is granted in part and denied in part. The motion is granted as to RFA Nos. 28, 30-40, 42, 51-53, 59, 61-71, 73, 82-84, 90, 92-102,

---

[9]Relator's Motion for Protective Order [etc.] at 2, n.1, Docket No. 390.

[10]Docket No. 390.

104, 113-115, 120, 122-131, 133, 142-144, 149, 151-160, 162, 171-173, 178, 180-189, 191, 200-202, 208, 210-220, 222, 231-233, 239, 241-251, 253, 262-264, 270, 272-282, 284, 293-295, 301, 303-313, 315, 324-326, 332, 334-344, 346, 355-357, 362, 364-373, 375, 384-386, 392, 394-404, 406, 415-417, 423, 425-435, 437, 446-448, 453, 455-464, 466, 475-477, 482, 484-493, 495, 504-506, 512, 514-524, 526, and 535-537. These RFAs are quashed.

Relator shall answer Interrogatory No. 20 only to the extent that doing so will not exceed Rule 33's 25-interrogatory limit.

The motion is otherwise denied.

DATED at Anchorage, Alaska, this 4th day of June, 2018.

/s/ H. Russel Holland
United States District Judge